is concerned, and his claim may have to be dismissed. Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001. Thereafter the defendant filed the instant petition for limitation of liability, naming the husband and wife as respondents. It is stipulated that the value of the vessel, if the petitioner is entitled to limit, is less than the claim of either one of them. They seek, however, to have me apply the rule of Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520, to suspend the limitation proceeding until their lawsuit has been heard, on the ground that this is in effect a single-claim proceeding. Petitioner replies that there are two separate claims. In this he is correct. Thibeault v. Poole, supra. The husband answers that if this makes a difference he will stipulate that in case petitioner is entitled to limit, he, the husband, will give petitioner, without further consideration, a full release of his claim. This, it is argued, would bring the case within the principle enunciated in Petition of Moran Transp. Corp., 2 Cir., 185 F.2d 386, certiorari denied 340 U.S. 953, 71 S.Ct. 573, 95 L.Ed. 687.

The Moran case establishes that there is no arbitrary rule of single vs. multiple claims, and that the real reason for assimilation of everything into the limitation proceedings flows from the necessity of marshaling assets. In that case there were two claims, but it was agreed that one, which was less than the admitted value of the vessel, should be paid in full in any event. The court, accordingly, ruled that in essence it was a one-claim case. Here, however, I am asked to go further. In Moran the court pointed out that the acknowledged claimant was not even in the position of disputing the right to limit, since he was to be paid regardless. The husband here offers to release his claim only if it is found that petitioner has no right to limit, which right he contests. Even the court which decided Moran did not extend it to palliative devices patently adopted for procedural maneuvering. See Petition of Trinidad Corp., 2 Cir., 229 F.2d 423, 429.

The motion to vacate the restraining order is denied, whether as a matter of law or as a matter of discretion.

Theodore A. MEYERS and Wife, Alice V. Meyers

v.

The UNITED STATES.

No. 581–52.

United States Court of Claims.

July 12, 1956.

Ellsworth T. Simpson, Washington, D. C., for plaintiffs.

Thomas Hogan, Washington, D. C., with whom was Charles K. Rice, Asst.

Atty. Gen., Andrew D. Sharpe and H. S. Fessenden, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

The plaintiffs sue to recover $29,439.-33, representing income tax deficiency, negligence penalty and interest thereon, for the calendar year 1948, and $269.16, with interest thereon, which sum represents a conceded overpayment for the calendar year 1950. The law governing the case and the basic facts are set forth in the decision rendered by the court on October 4, 1955, Ct.Cl., 134 F.Supp. 520. The court held in that decision that there was no evidence supporting defendant's beginning cash on hand in its net worth statement and that plaintiff's evidence failed to furnish a basis for entering judgment in its behalf. The case was remanded to a commissioner of this court for the purpose of taking the testimony of agent Kennedy relative to the cash on hand as of December 31, 1942, and as of December 31, 1947, and to have his net worth statement put in evidence for the purpose of determining the cash on hand on January 1, 1948, and for a report thereon.

The testimony of Agent Kennedy was taken and the net worth statement used by him in examining plaintiffs' returns for the years 1942 through 1947 was put in evidence. The evidence shows that the net worth statement used by agent Kennedy was prepared and given to him by plaintiffs' attorney. This statement furnished by plaintiffs shows $50,000 cash on hand on December 31, 1942, and $40,000 cash on hand on December 31, 1947. The net worth statement of Agent Thomas shows $50,000 cash on hand on December 31, 1942, and $19,211.39 cash on hand on December 31, 1947. The evidence shows that the difference between the $40,000 cash on hand as of December 31, 1947, as shown by Agent Kennedy's net worth statement and the cash-on-hand figure of $19,211.39 as of January 1, 1948, as shown on the net worth statement by Agent Thomas, was the result of an error made by plaintiffs in the net worth statement furnished Agent Kennedy concerning loans made to one of plaintiffs' businesses. When this error is corrected the net worth statements are not inconsistent.

The plaintiffs still contend that the defendant's use of the net worth method was arbitrary and that its determination that plaintiffs had $50,000 cash on hand on December 31, 1942, and $19,211.39 cash on hand on January 1, 1948, are arbitrary and not supported by the record.

However, the commissioner of this court, who heard the evidence and observed the demeanor of the witnesses, is made the judge of questions of fact and his findings are presumed to be correct. The commissioner has found in finding 10 that:

"Defendant's use of the figure of $50,000 cash on hand December 31, 1942, is supported by the evidence as reasonable under the circumstances described. The figure of $40,000 cash on hand December 31, 1947, is not supported by the evidence. Defendant's recomputation of the estimated cash on hand as of the latter date and use of the net worth method is supported by the evidence and is not arbitrary."

After an examination of the record, we agree with and adopt his finding. The element of closeness involved in this case is primarily due to the failure of the plaintiffs to come forward with facts peculiarly within their knowledge to explain the discrepancies involved in the case. The plaintiffs' other contentions have been considered and found to be without merit.

Plaintiffs are not entitled to recover for the year 1948.

Plaintiffs are entitled to recover the conceded overpayment for 1950 in the amount of $269.16.

Judgment will be entered for plaintiffs in the amount of $269.16, with interest as provided by law.

It is so ordered.

JONES, Chief Judge, and LARA-MORE, MADDEN, and WHITAKER, Judges, concur.

**SMITH-JOHNSON STEAMSHIP CORP.**
v.
**The UNITED STATES.**
No. 98-55.

United States Court of Claims.
July 12, 1956.

Arthur M. Becker, Washington, D. C.; Melvin Spaeth, Gerald B. Greenwald and Becker & Maguire, Washington, D. C., on the brief, for plaintiff.

Leavenworth Colby, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN, and LARAMORE, Judges.

PER CURIAM.

In our opinion in this case rendered March 6, 1956, 139 F.Supp. 298, which was before us at that time on plaintiff's motion to strike defendant's special defense, we granted that motion, holding that plaintiff's petition was based on a statute and did not arise out of the maritime contract between the United States and plaintiff. Hence, we said the courts of admiralty did not have jurisdiction of such a case and that this court did.

The Second Circuit Court of Appeals had held in Sword Line, Inc., v. United States, 228 F.2d 344, that the suit was on the contract, and since the contract was for the charter of a ship, it was maritime in nature, and, therefore, the admiralty courts had jurisdiction. Certiorari was granted in that case, and the Second Circuit was affirmed by the Supreme Court, 76 S.Ct. 1047, in a *per curiam* opinion, which reads:

"*Per curiam.* Certiorari is granted limited to the question whether admiralty had jurisdiction over the controversy stated in the libel and the judgment is affirmed. The libel, though dependent on a