**520**

(c) Under the terms of the Collective Bargaining Agreement in effect at the time of libelant's injuries, maintenance was payable at $8 per day during outpatient treatment periods until maximum improvement had been reached. Libelant is entitled to maintenance for a period of 350 days at $8 per day. This amounts to $2,800.

I therefore award to the libelant damages in the sum of $65,489.

Decree to enter accordingly.

The foregoing shall constitute the Court's findings of fact and conclusions of law. Should either party desire enumerated or additional findings, these may be proposed upon notice to the other side.

Theodore A. MEYERS and Wife,
Alice V. Meyers

v.

The UNITED STATES.

No. 581–52.

United States Court of Claims.
Oct. 4, 1955.

Ellsworth T. Simpson, Washington, D. C., for plaintiffs.

H. S. Fessenden, Washington, D. C., with whom was Asst. Atty. Gen. H. Brian Holland, for defendant. Andrew D. Sharpe and Ellis N. Slack, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

The plaintiffs[1] sue to recover $29,439.33, representing income tax deficiency, negligence penalty and interest thereon, for the calendar year 1948, and $269.16, with interest thereon, which sum represents a conceded overpayment for the calendar year 1950. The issue presented is whether the Commissioner of Internal Revenue properly employed the net worth method in determining plaintiff's income tax liability for the calendar year 1948. The plaintiff challenges the propriety of the use of the net worth method under the circumstances of this case and also the defendant's determination of cash on hand on December 31, 1947, by the use of that method.

From 1925 to 1934, the plaintiff operated gambling establishments in Washington, D. C. From 1937 to September 1947, the plaintiff operated a gambling establishment in Maryland. At this latter place of business plaintiff employed from 10 to 35 people and specialized in dice, horses and blackjack. His establishment was open daily from 1:00 p. m. to 6:00 a. m., and he served food and drink. He established a loss limit of $2,000 for each race and sometimes accepted wagers on as many as 30 races daily. He estimated that he needed about $100,000 working capital to cover bets.

In May 1948, plaintiff loaned Walter Novak $19,000 to open a gambling business in Maryland, known as Rockway Towers. This business had been in operation for about five weeks when it was raided on June 5, 1948. The plaintiff was arrested, with others, charged, found guilty and received a prison sentence of one year. The plaintiff was in prison the latter part of 1948 and the first part of 1949. During this period the Bureau of Internal Revenue examined the plaintiff's returns for 1942 through 1947. These returns had been filed on a cash and calendar year basis. After investigation, preparation of a partial net worth statement and conferences with the plaintiff, his returns for those years were accepted as correct.

The plaintiff had no gambling income in 1948 after his arrest on June 5. On his return for 1948, he reported $56,600 as income from wagering and testified that this represented successful private bets on the horses. His 1948 return disclosed taxable net income of $22,489.87 and a tax liability of $4,837.10. His return for 1949 disclosed a taxable net income of $27,768.49 and a tax liability of $6,688.88. His return for 1950 disclosed a net taxable income of $3,346.88 and a tax liability of $269.16, a five percent delinquency penalty of $13.46, and one month's interest of $1.35, or a total of $283.97.

During the latter part of 1951 and the early part of 1952, plaintiff's returns for 1948, 1949, and 1950 were examined by agents of the Bureau of Internal Revenue. For the year 1948, the Commissioner, employing the net worth method, found unreported income of $49,394.63. A deficiency for 1948 in the amount of $24,052.82 and a five percent negligence penalty of $1,202.64 were determined. These sums, with interest thereon of $4,183.87, were assessed and the total

---

[1]. Mr. and Mrs. Meyers filed joint returns for the years in question. Since it was Mr. Meyers' activity that resulted in the controversy, he will, for convenience, be hereafter referred to as the plaintiff.

of $29,439.33 was paid on February 20, 1952. Over-assessments were found by the same method for 1949 and 1950. The overpayment for 1949 has been refunded and the overpayment for 1950 is conceded. The plaintiff filed a timely claim for refund for 1948. More than six months have elapsed without any action by the Commissioner and this suit followed.

 The necessity and danger of the net worth method of determining unreported income was fully discussed by the Supreme Court in Holland v. United States, 348 U.S. 121, 75 S.Ct. 127. The plaintiff contends that the use of the net worth method in determining his income for the year 1948 was improper and arbitrary. He contends that his records were adequate and that the sole reason for the use of the method was because the Commissioner had erroneously classified him as a racketeer, when in fact he had not engaged in the gambling "business" during the taxable year 1948. The revenue agent testified that the reason why plaintiff's income was determined by the use of the net worth method was because substantially all his income was received from gambling activity. For the taxable year the plaintiff reported as income $56,600 as his net winnings from gambling. He stated that he won this money by successful betting on the horses. His record reflecting his winnings and losses consists of a piece of paper setting forth certain dates with the amount he won or lost on those dates. This record may or may not have been complete. The Commissioner decided that it was incomplete, based on his computation of plaintiff's income by the use of the net worth method. The necessity of establishing the incompleteness or inadequacy of the taxpayer's records is not a condition precedent to the use of the net worth method. The net worth technique is a method of determining income which may be employed by the Commissioner in his discretion, Holland v. United States, supra. Whether or not the court will agree with the Commissioner's determination that there is unreported income is another question.

 If an increase in net worth is established for the taxable year and the facts are such that give rise to an inference that this increase was income, the method is appropriate. The determination and assessment of the Commissioner in such cases is presumed to be correct. When suing for a refund the taxpayer must not only prove that the Commissioner's determination is wrong, but also must prove the facts upon which the correct tax can be determined. Reinecke v. Spaulding, 280 U.S. 227, 50 S.Ct. 96, 74 L.Ed. 385; Helvering v. Taylor, 293 U.S. 507, 514, 55 S.Ct. 287, 79 L.Ed. 623; Decker v. Korth, 10 Cir., 219 F.2d 732, 737; Harvey v. Early, 4 Cir., 189 F.2d 169, 171.

We turn now to the Commissioner's determination based upon the net worth method, that plaintiff had unreported income for the calendar year 1948 in the amount of $49,394.63. The plaintiff takes issue with the Commissioner on only one item. That item is the cash on hand on December 31, 1947. The plaintiff contends that he had cash on hand in excess of $70,000. The Commissioner found that he had $19,211.39 cash on hand. The only evidence that plaintiff had $70,000 cash on hand on December 31, 1947, is his own testimony. The $19,000 that he loaned Walter Novak in May 1948, could have been taken out of plaintiff's reported winnings of $39,000 on January 22, 1948. The $40,000 cash used to pay taxes in 1948 was taken into account in the Commissioner's net worth statement. Also, the Commissioner reduced the cash on hand on December 31, 1948, to zero, which had the effect of reducing the plaintiff's income for that year.

On the other hand, the evidence in the record to support the defendant's position that the plaintiff only had $19,211.39 cash on hand on December 31, 1947, is very weak. Revenue Agent Thomas, who examined plaintiff's returns for 1948, 1949, and 1950, testified that Revenue

Agent Kennedy, who examined plaintiff's returns for the years 1943 through 1947, had prepared a partial net worth statement to check those returns which reflected cash on hand on December 31, 1942, of $50,000. In computing plaintiff's income for 1948, Thomas used Kennedy's $50,000 figure as the cash on hand on December 31, 1942, and by ascertaining the income plaintiff reported each year and the other undisputed changes in plaintiff's net worth arrived at the $19,211.39 figure as cash on hand on December 31, 1947. The plaintiff does not dispute Thomas' computation assuming the correctness of $50,000 cash on hand on December 31, 1942. But the plaintiff testified that he had cash on hand on December 31, 1942, in the amount of $100,000, which if worked through the same computation would result in the payment of the correct taxes for the intervening years and no deficiency for 1948. The plaintiff contends that Agent Kennedy's partial net worth statement shows $40,000 as cash on hand on December 31, 1947.

 Although Agent Thomas used Agent Kennedy's net worth statement to ascertain the cash on hand on December 31, 1942, he could not remember whether or not the $40,000 figure was on that statement as the cash on hand on December 31, 1947. Also, although the defendant had been requested in open court to produce Agent Kennedy's partial net worth statement it failed to do so. Further it failed to call that agent as a witness, and objected to his testifying when plaintiff called him as his witness. The trial commissioner sustained this objection. This was erroneous. On the evidence that is in the record, the partial net worth statement and the testimony of Agent Kennedy is necessary for either party to establish its case. No explanation whatsoever has been given by defendant as to how the $50,000 cash on hand as of December 31, 1942, was ascertained. Whether or not it was correct or the reason for it being $50,000 rather than $100,000 we do not know and have no way of determining because defendant has failed to put any evidence in the record to support it. The most important part of a net worth computation is the beginning net worth and the most important part of that is the cash on hand. Defendant has not offered a scintilla of evidence to support its cash on hand figure. The record as it stands therefore unequivocally leaves the $50,000 determination in the category of being arbitrary. On the record defendant's determination lacks the presumption of correctness. The fact the defendant failed to put into evidence the proper proof to justify or support its determination to show that it was not arbitrary does not mean the plaintiff is entitled to recover. The evidence for the plaintiff is not clear or complete enough to justify a decision for him. The case cannot be disposed of without further proof.

The case is therefore remanded to the commissioner [of the court] to take the testimony of Agent Kennedy relative to the cash on hand on December 31, 1947, and on December 31, 1942, and to have his partial net worth statement put in evidence and the taking of such further proof as either party may desire to offer, and for a supplemental report on the record so made.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.