Constantine **THOMAS** et al.,
Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent.

No. 5052.

United States Court of Appeals
First Circuit.

April 12, 1956.

Charles H. Morin, Boston, Mass., for petitioners.

David O. Walter, Atty., Dept. of Justice, Washington, D. C., with whom Charles K. Rice, Acting Asst. Atty. Gen., and Lee A. Jackson, Harry Baum and Walter Akerman, Jr., Attys., Department of Justice, Washington, D. C., were on the brief, for respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is a petition brought by the taxpayers for a review of decisions of the Tax Court of the United States filed May 26, 1955, which determined deficiencies in the joint returns of petitioners Constantine Thomas and his wife, Marie, of Chelmsford, Massachusetts, for the years 1945 through 1948, and in the individual returns of Constantine Thomas for the years 1943 and 1944.

The facts may be summarized substantially as they appear in the findings of the Tax Court.

During the taxable years 1943 to 1948, inclusive, Constantine Thomas, sometimes known as Charles Thomas, owned 97 per cent, and Marie Thomas owned 2 per cent of the stock of Thomas, The Master Cleaner, Inc., a Massachusetts corporation doing business in Lowell. Thomas was president and treasurer of the corporation and in complete control of the business which dealt in dry cleaning and the sale of furs. The corporation filed federal income tax returns with the Collector of Internal Revenue at Boston upon the accrual basis and covering calendar years.

Thomas was born in Greece about 1894 and came to the United States at the age of 10 years. He has since resided in the United States. From about 1918 until about 1932 he engaged in various ventures including the taxicab business, dealing in used cars, operating a restaurant and investing in a hotel. About 1929 he started a dry cleaning business under the name of Highland Cleaners and Dyeing which he sold after operat-

ing for a year or two. He also invested in stocks on margin or on borrowed funds and had an account with a brokerage firm in Boston. He borrowed from the Union National Bank of Lowell, or its predecessor. In 1932 the bank took over collateral on his loans and charged off $8,926.85 as a loss.

About 1932 Thomas started his present dry cleaning business which was incorporated in February 1935.

Constantine and Marie were married in 1938. Marie's father, Christo Vangos, was manager of a confectionery establishment in Easthampton. At the time of the marriage of the petitioners, Vangos gave them money to assist in buying a home. Marie helped Constantine in his business for about a year after their marriage.

In 1940 the corporation sought a loan for $4,500 from the Reconstruction Finance Corporation. The Union National Bank of Lowell agreed to participate up to 20 per cent in the loan, provided the bank receive a compromise offer of $400 in full payment of the loan to Thomas charged off in 1932 in the amount of $8,926.85. Thomas paid the $400 in installments at the rate of $7 per month beginning in June 1940 and made a final payment of $148 in December 1943. The corporation's loan was reduced by installment payments to $3,586.83. It was paid on July 13, 1941, and a new loan of $5,400 was made. This was reduced by November 1942 to $2,070.30 which was paid December 7, 1942. Thomas, individually, borrowed $800 from the same bank in May 1940 and paid the loan in January 1942.

In April 1941 the corporation applied to the R. F. C. for a loan of $1,800 for the purchase and installation of two pieces of equipment. The application contained a balance sheet of the corporation as of December 31, 1940, and was accompanied by a statement of Thomas' personal assets. The corporation's financial statement showed cash on hand $1,-272.81, total assets $22,353.02, current liabilities of $3,837.37 and a chattel mortgage to the R. F. C. for $3,960. Net sales for the five preceding years were stated as ranging between $25,000 and $27,000 annually. Thomas' salary was stated to be $2,500 a year. The ownership interest was shown as common stock $5,000; surplus, donated, $8,438.36; and undivided profits, $1,117.29. The statement purporting to show as of April 26, 1941, all assets and liabilities of Thomas, other than his interest in the corporation, shows cash on hand $200; securities $1,660; real estate valued at $11,000 (having an assessed value of $7,000); furniture $3,000; cash surrender value of life insurance, $647; and shows liabilities of $5,150.

Thomas filed an income tax return for 1940 showing no tax due. He filed no return for 1941. His return for 1942 showed a tax of $33, of which two quarterly installments were paid in March and June 1943. His return for 1943 reported a total income of $2,658 of which $2,550 was salary and $108 was dividends. Tax withheld was greater than the tax due and a refund was made. His return for 1944 reported income of $2,652.50, consisting of salary $2,550 and interest $102.50. The petitioners' joint return for 1945 reported salary of $5,000 and dividends or interest of $500.62. Their joint return for 1946 reported salary $5,200, dividends $579.40 and interest $213.44. Their joint return for 1947 reported salary $5,100, dividends $957.50 and interest $613.47. Their joint return for 1948 reported salary $4,940, dividends $1,186.61, interest of $669.80, and long-term capital gain of $80.

In December 1943 Vangos made two gifts of $3,000 each for the benefit of the petitioners' two children. Of these amounts $2,900 was deposited in a savings account for the benefit of each child.

At the beginning of 1943, Constantine Thomas had the following assets exclusive of cash on hand:

Assets

Bank Accounts

Central Savings Bank—
#107875 $ 50.54

Bonds $5,000.00

Securities

5 shares Radio Corp.
of America $ 56.25

14 shares Wright
Aeronautical Corp. $ 992.25

90 shares Maraceabo
Oil Ex. Co. $1,242.29

Loans Receivable $3,002.45

Real Estate $5,500.00

Equity in corporation—
Thomas, The Master
Cleaner, Inc. $5,000.00

During the year 1943 Thomas' personal and living expenditures amounted to $2,779.40. At the end of 1943 he had assets to the value of $28,940.71, exclusive of cash on hand, and no liabilities.

During the year 1944, Thomas' personal and living expenditures amounted to $2,629.08. At the end of 1944 he had assets of $34,059.44, exclusive of cash on hand, and liabilities of $1,494.50.

At the beginning of 1945 assets of Constantine and Marie Thomas amounted to $34,059.44, exclusive of cash on hand, and their liabilities amounted to $1,494.-50. During the years 1945 to 1948, inclusive, their living expenses were as shown below and their assets and liabilities as of the end of each year were as follows:

|  | Living Expenses during year | End of Year Assets | Liabilities |
|---|---|---|---|
| 1945 | $5,500.62 | $ 51,222.55 | $ 0 |
| 1946 | $5,992.84 | $ 58,101.72 | $ 282.34 |
| 1947 | $6,671.07 | $ 82,274.71 | $5,000.00 |
| 1948 | $6,836.41 | $104,497.20 | $5,000.00 |

Thomas' interest in the corporation is valued at $5,000 in the foregoing computation of assets. At the end of 1943 his assets included loans receivable of $1,794.86. At the end of 1944 his liabilities included loans payable to the corporation amounting to $1,494.50. At the end of 1945 the petitioners had loans receivable of $1,128.79. At the end of 1946 loans payable to the corporation by the petitioners amounted to $282.34. The petitioners had loans receivable amounting to $19,868.75 at the end of 1947, and $41,325 at the end of 1948.

On March 26, 1946, and on August 29, 1949, the petitioners submitted net worth statements to the Department of State, Visa Division, for the purpose of satisfying the immigration authorities as to the ability of Thomas to provide financially for a relative whom he brought to the United States from Greece. The statement submitted in 1946 showed assets of a market value of $86,978.56, including $29,211.72 as book value of 99 per cent of stock of the corporation on

December 31, 1945, and $1,128.79 as accounts receivable from the corporation, and no liabilities. Income for 1946 from all sources was estimated as salary of $5,000, share in profits of the corporation of $6,930, and investment income of $973.90. The statement submitted in 1949 showed assets of a market value of $123,290.47, including $25,894.04 as book value on December 31, 1948, of 99 per cent of the stock of the corporation, and $41,325 as accounts receivable from the corporation, and no liabilities. Income for 1949 from all sources was estimated as salary $5,000 and interest or dividends $1,809.61.

On the petitioners' return for 1946, 1947 and 1948 dependency exemptions were claimed for Christo Vangos and Jatina Vangos, the parents of Marie Thomas.

The deficiencies were determined by the net worth and expenditures method. The computation of net worth was agreed upon except for the amount of cash on

hand at the beginning and end of each year.

The Tax Court found that Thomas had unreported income of $2,718.33 for 1943 and $3,100.81 for 1944 and that the petitioners had unreported income for the years 1945 to 1948 as follows:

| | |
|---|---|
| 1945 | $16,457.64 |
| 1946 | $ 5,235.98 |
| 1947 | $18,941.03 |
| 1948 | $21,085.86 |

The Tax Court further found that Constantine Thomas filed false and fraudulent income tax returns for the years 1943 and 1944. A part of the deficiency for the years 1943 and 1944 was found to be due to fraud with intent to evade tax. It also found that Constantine and Marie Thomas filed false and fraudulent income tax returns for the years 1945, 1946, 1947 and 1948. A part of the deficiency for each of those years was found by the Tax Court to be due to fraud with intent to evade tax.

Deficiencies were determined by the Tax Court as follows:

*Deficiencies*
*Penalty*

| Taxable Year | Income Tax | Sec. 293(b), I.R.C. 1939 |
|---|---|---|
| 1943 | $  601.08 | $  300.54 |
| 1944 | $  746.53 | $  373.27 |
| 1945 | $6,853.75 | $3,426.88 |
| 1946 | $1,287.95 | $  643.98 |
| 1947 | $7,329.34 | $3,664.67 |
| 1948 | $5,441.12 | $2,720.56 |

Except for an adjustment of $6,000 with respect to gifts found to have been made for the benefit of the taxpayers' children in 1943, the Tax Court sustained the Commissioner's determinations of deficiency which had been calculated upon the assumption that the taxpayer had no cash on hand as of January 1, 1943.

In a criminal case " ' * * * net worth of the taxpayer at the beginning of the tax year must be clearly and accurately established by competent evidence.' " Brodella v. United States, 6 Cir., 1950, 184 F.2d 823, 825.

Despite the difference between the burden of proof in a criminal case and that in a civil determination of tax deficiency, " * * * we see no reason why the determination of opening net worth should be any less vital to the validity of the method of computation invoked in the one type of case than in the other." Thomas v. Commissioner of Internal Revenue, 6 Cir., 1955, 223 F.2d 83, 89.

By stipulation of the parties the only element of net worth open for determination in the proceedings below was the amount of cash on hand at the beginning and end of each of the tax years in question.

We turn first of all to a consideration of taxpayers' contention that the Commissioner's determination of deficiency is arbitrary and excessive and is not entitled to the usual presumption of validity. The Tax Court seems to have been of the opinion that the taxpayers could successfully attack respondent's figure for cash on hand only by making an affirmative showing of the correct amount. In this connection the Tax Court said (R.A. pp. 311–12): "The deficiencies were determined upon the assumption that Thomas had no cash on hand on January 1, 1943. The burden is upon the petitioners to prove the amount of cash on hand." And again (313): "The record is at least equally consistent with the conclusion that he had no cash. The petitioners have shown no basis for a finding that they had any cash on hand at any of the critical dates, and accordingly we must sustain the respondent as to that matter."

We believe that these quoted passages do not correctly state the law. The presumption which favors the determinations of the Commissioner is not to be regarded as meaning that any arbitrary figure assigned to the cash on hand account without support in the record must nonetheless be treated as conclusive in the absence of an affirmative showing by the taxpayer of the correct amount.

In Thomas v. Commissioner of Internal Revenue, supra, 223 F.2d at page 88, the court said:

" 'Where it is apparent from the record that the Commissioner's determination is arbitrary and excessive, the taxpayer is not required to establish the correct amount that lawfully might be charged against him, and he is not required to pay a tax that he obviously does not owe. In proceedings before the Tax Court, as distinguished from suits for refund in the District Court, it is sufficient to show that the Commissioner's determination is invalid. Upon such a showing the case should be remanded to the Tax Court for further hearings on the point involved.' "

■ The burden upon the taxpayer is not to show the correct amount, but rather that " * * * the determination of respondent and/or the Board is without any substantial support in that record." Autosales Corporation v. Commissioner of Int. Rev., 2 Cir., 1930, 43 F.2d 931, 937.

■ If, as it would seem from the opinion of the Tax Court, the determinations of the respondent as to cash on hand were sustained below merely because the taxpayer failed to establish the correct figure and despite the fact that there is little or no evidence in support of the respondent's position, then it seems to us that these findings of the Tax Court must be set aside as clearly erroneous.

The evidence in support of respondent's position as to cash on hand is not particularly impressive. In 1940 the taxpayers' corporation borrowed $4,500 from the Reconstruction Finance Corporation. This loan was paid off in July 1941, and a new loan of $5,400 was made which was paid off in December 1942. Thomas individually borrowed $800 from the same bank in May 1940, and paid the loan in January 1942. A statement purporting to show as of April 26, 1941 all assets and liabilities of taxpayer individually reveals $200 in cash on hand. Between 1940 and 1943 he paid off a $400 compromise of an old obligation in the amount of $8,926.85. He paid no income tax for 1940 or 1941 but had a tax liability of $33 for 1942.

It seems to us that this evidence is primarily negative in character—that is, it may tend to prove that the taxpayer had no large hoard of cash, but it would seem to be completely ineffective to establish that he had no cash at all.

If taxpayer had cash substantially in the amounts indicated below there would be no taxable increase in net worth for the corresponding years or for any previous years:

| 1943 | — | $ 2,700 |
| 1944 | — | $ 5,800 |
| 1945 | — | $22,000 |
| 1946 | — | $27,000 |
| 1947 | — | $46,000 |
| 1948 | — | $67,000 |

Certainly, it seems to us, the Tax Court would not be clearly erroneous in finding that the evidence indicated the taxpayer did not have cash on hand in the amount of $22,000 as of January 1, 1943. But we believe that the Tax Court was clearly in error when it found that the taxpayer did not have $5,800, or $2,700, or, in fact, any cash on hand at all as of the same date. We find no evidence in the record even tending to support such a finding, nor is it appropriate for the Tax Court to fix an arbitrary figure unsupported by the evidence simply because the txpayer has made no affirmative showing to the contrary.

A statement of taxpayer's net worth as of April 26, 1941, shows a figure of $200 for cash on hand. If this evidence is thought to be effective in a negative sense to help show that the taxpayer did not have a large hoard of cash as of January 1, 1943, we do not understand why it should not be equally effective to show that the taxpayer probably did have a moderate or small amount of cash on hand.

We think it clear, therefore, that respondent's determination that the taxpayer had no cash on hand was sustained not because the facts of the case warrant such an inference, but merely because the taxpayer has made no affirmative showing to the contrary.

If respondent is to be permitted to make an arbitrary guess as to the proper figure for the cash on hand account, there would seem to be no reason as a general proposition why similar guesses should not be made as to each of the constituent elements comprising the taxpayers' net worth. Under these circumstances the entire net worth technique becomes nothing but an elaborate accounting sham lending a semblance of system and logic to a determination of deficiency which could have no greater validity than the original guesswork upon which it was based.

■ A further contention of the taxpayers which merits consideration is that the respondent has not properly satisfied the requirement established by the Supreme Court in Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 136, 99 L.Ed. 150, that there must be "* * * proof of a likely source, from which the jury could reasonably find that the net worth increases sprang * * *." Respondent contends that this rule has no application in cases involving the civil fraud penalty or routine cases of deficiency. We do not agree. We think it is of equal importance in a civil case to show that the taxpayer's net worth increases are attributable to currently taxable income. It seems to us more reasonable to view this particular requirement as an indispensable element of the net worth method in any of its applications rather than as an additional safeguard superimposed upon the net worth method for the sole benefit of defendants in criminal cases—particularly in view of the very favorable position which such persons already enjoy with respect to the burden of proof.

■ Respondent further contends that in any event the requirement has been met because the taxpayers' corporation is a possible source of taxable income which could account for the net worth increases. We think this argument assumes the very fact to be proved. There must be some independent showing that the corporation might be the source of the unreported income, not merely a negative inference arising from the prior assumption that the increases were taxable and therefore must derive from the corporation since no other taxable source is apparent.

In United States v. Johnson, 1943, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546, the taxpayer concealed his ownership in various enterprises which were possible sources of the unreported income. In the Holland case the business was proven to be capable of producing much more income than was reported and in an amount sufficient to account for net worth increases.

■■ No such showing has been made in the instant case. The books of the corporation are admittedly consistent. Of course this does not prove they are honest, but in the absence of some independent evidence to the contrary, we believe that respondent has not indicated a likely source of taxable income. There can be no presumption that the books of the corporation are wrong, for any such approach would render entirely nugatory this particular safeguard against abuses of the net worth method.

The decisions of the Tax Court are reversed, and the cases are remanded for the admission of further evidence, for findings as to the petitioners' cash on hand at the commencement and termination of each of the tax years involved, for findings of a likely source of taxable income, and for other proceedings not inconsistent with this opinion.