ESTATE of Albert D. PHILLIPS, Deceased, Viola T. Chartrand, formerly Viola T. Phillips, Administratrix, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16235.

United States Court of Appeals
Fifth Circuit.

July 16, 1957.

John J. Trenam, and Robert W. Patton, Tampa, Fla., Fowler, White, Gillen, Yancey & Humkey, and Massari & Patton, Tampa, Fla., of counsel, for petitioner.

Kenneth E. Levin, I. Henry Kutz, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Dept. of Justice, John Potts Barnes, Chief Counsel, Internal Revenue Service, Rollin H. Transue, Sp. Atty., Internal Revenue Service, for respondent.

Before BORAH, RIVES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The Taxpayer's appeal from adverse judgment of the Tax Court for a deficiency (but without fraud or statutory penalties) based upon the increase in net worth and non-deductible expenditure method presents the sole question whether there was an adequate showing of the cash on hand in the opening net worth statement as of January 1, 1947. A corollary to this is whether the presumptive correctness of the Commissioner's deficiency is enough without more to allow the Tax Court to take the admitted cash on hand at the end of the period (November 17, 1948) and dispense with the necessity of having some proof on any amount at the opening on the ground that the Taxpayer has failed to show that he did not have an equal amount on hand at the beginning dates of each year.

We say solely because we find no substance whatsoever to the contention of Taxpayer that there was no " * * * proof of a likely source from which the

[court] could reasonably find that the net worth increases sprang * * *," Holland v. United States, 348 U.S. 121, 138, 75 S.Ct. 127, 136, 99 L.Ed. 150, 165, and applicable here even though this is a civil, not criminal, matter "because the same limitations inhere in the net worth method wherever it is sought to be applied," Fairchild v. United States, 5 Cir., 240 F.2d 944, 948. Nor is there any support in the record as made for petitioner's complaint that the Commissioner failed to check leads which might establish the correct amount of cash on hand January 1, 1947.

The Taxpayer had a multiple business. He operated a legitimate orange grove on a business-like basis with traditional books and records apparently accurate and adequate. He ran a pool hall apparently legal, but on a cash no-books basis. And, admittedly as the source of his wealth, he operated the revolting, but profitable, illegal Bolita, Cuba Numbers racket, Clay v. United States, 5 Cir., 239 F.2d 196. The numbers game produced large revenues, all handled furtively in cash by pickup men. The few records kept, partial summaries of the gross, net after commissions, and the "hits" of illusory lucky numbers by patrons, showed a thriving going concern with ample access to customers, business, revenue, profits and cash.

While the net worth method is one adaptable to this situation, this is a civil tax matter in which exactions are for taxes due, not penalties for criminal conduct. We need to recall that this technique "is not an accurate method and its results are at best approximations," Goldberg v. Commissioner, 5 Cir., 239 F.2d 316, 318; Demetree v. United States, 5 Cir., 207 F.2d 892; Olinger v. Commissioner, 5 Cir., 234 F.2d 823.

By stipulation a net worth statement as of the opening, January 1, 1947, January 1, 1948, and closing date, November 17, 1948, was agreed to as accurately reflecting all assets and the admitted apparent increases in net worth except as to cash on hand January 1, 1947, and January 1, 1948. Cash on the closing date November 17, 1948, found in Taxpayer's home safe was stipulated to have been $4500.

Instead of starting with cash as an important [1] item in the opening statement the Tax Court reasoned backward and held [2] that the final figure on closing would be considered the opening figure unless Taxpayer proved, which he did not do, that there was a change.

Two assumptions, each faulty, are implicit in this action of the Tax Court. First, that the cash balance has no significance, and second, that there was some basis for considering that Taxpayer's cash position had remained relatively constant throughout this time.

As to the first, it developed on argument and was confirmed by supplemental memoranda, that if the Tax Court's assumption is accepted, the failure of the Commissioner in the opening net worth statement to include a like figure ($4500) for cash on hand (January 1, 1947 and 1948) assumed to have been the same, actually produced an excessive [3] tax for the last year, 1948.

---

1. See, e. g., Meyers v. United States, 134 F.Supp. 520, at page 523, 133 Ct.Cl. 123, certiorari denied 352 U.S. 989, 77 S.Ct. 388, 1 L.Ed.2d 368, "The most important part of a net worth computation is the beginning net worth and the most important part of that is the cash on hand."

2. The whole of this crucial matter in the Tax Court's opinion was the textual statement "the increase in net worth is established [1] and respondent's computation of petitioner's * * * living expenses seems to us amply supported by the evidence * * *" to which was appended its footnote 1:

Fn. 1 "The parties are unable to agree, for the purpose of determining net worth, on the amount of cash on hand but although it appears that decedent had some cash at the beginning of each of the years in question, petitioner has not shown that he did not have an equal amount on hand at the end of each of those years. Accordingly, the cash balances, except as stipulated, have no significance."

3. Tentative computation, including the $4500 in opening, as well as closing, statement diminishes the increase in net worth for 1948 from $31,834.86, as stipulated, to

On the second, which is more important, this record affords absolutely no basis whatsoever for the implied finding of the Commissioner or Tax Court that the cash was substantially the same at opening and closing. Whatever weaknesses the Taxpayer's affirmative case might have had in establishing a large amount on hand, due in large part undoubtedly to the fact that Taxpayer's cause was now carried on by his surviving widow whose knowledge of operations, while considerable, was naturally limited on actual financial matters, this record contains not a syllable from which the most enthusiastic trier could find that the cash position was constant.

Reported in Taxpayer's 1947 return at $117,715.20 and recomputed by the Tax Court from weekly summaries of the "in," "out," and "hits," the numbers game produced a gross cash income of $124,734.65 with a profit, also in hard cash, of $22,439.10. So-called "sales" for a sample period in 1948 ran from $2887.95 to $4572.25 per week. Estimates of the operating profit made by the widow, ran from 10% to 20%. All revenues and profits in the numbers business was kept in cash in the safe.

Moreover, the only bank account maintained by Taxpayer was for his orange grove operation. It was undisputed that substantial deposits, all taken from the safe in his home, were made during these years. Deposited in various amounts was the total sum of $25,000 for the year 1946, the sum of $37,005 for 1947, and $28,735 for the year[4] 1948. Of even greater significance is the timing and size of some of those payments. For within three weeks of the critical[5] date January 1, 1947, $19,000 in cash was taken from the safe and deposited in the grove account. Whatever the source of these cash deposits, they indisputably came from the safe and show convincingly that large sums of cash necessarily were frequently kept on hand.

Actually, in view of the peculiar nature of Taxpayer's business, the Commissioner's argument and the Tax Court's finding seems almost self-defeating. The additional unreported business income reconstructed on the net worth-nondeductible expense basis was $18,128.11 for 1947 and $52,185.91 for 1948. There is no suggestion in this record that this enormous income could have come either from a small-time pool hall or an orange grove with admitted losses of $8,170.41 in 1947 and $9,651.30 in 1948. The course then had to be the numbers racket which, either on the estimate of the widow (20%) or the margin of profit computed by the Tax Court ($22,439.10, supra) would require substantial sums[6] of cash on hand. Consequently if the Taxpayer, as the inference drawn by Commissioner and Tax Court asserts, had added income, it necessarily required more and larger cash balance.

That the Commissioner's deficiency starts with a presumptive correctness which is continued in favorable findings by the Tax Court, Burford-Toothaker Tractor Company v. Commissioner, 5 Cir., 192 F.2d 633, certiorari denied

---

$27,334.86, or a reduction in the tax of $2,624.87. Adjustment along this or other proper lines would have therefore required, in any event, remand to the Tax Court for recomputation.

4. In addition to this $28,735, a total of $17,000 in cash from the safe was advanced for purchase of specific properties.

5. These deposits were:

| | |
|---|---|
| January 4, 1947 | $ 1,000 |
| January 15 | 17,000 |
| January 25 | 1,000 |
| | $19,000 |

6. For example, on this basis net profits from the numbers racket (and pool hall) for 1947 would have been:

| | |
|---|---|
| As reported in Return | $30,102.26 |
| Added as reconstructed | 18,128.11 |
| Total | $48,230.37 |

This would have meant a net profit of approximately $4,000 per month and $1,000 per week. This would have required a gross operating income each month of $80,000 at 5% profit; $40,000 at 10% and $20,000 at 20%, on an annual gross between $240,000 and $960,000. In a cash business of cash collections and cash payments, we cannot on this record credit an implied finding that assumed that $4,500 on hand would produce $4,000 profit.

343 U.S. 941, 72 S.Ct. 1033, 96 L.Ed. 1347; Hightower v. Commissioner, 5 Cir., 187 F.2d 535, 536; Archer v. Commissioner, 5 Cir., 227 F.2d 270; Goldberg v. Commissioner, 5 Cir., 239 F.2d 316; Olinger v. Commissioner, 5 Cir., 234 F.2d 823, does not alter the basic nature of income reconstructed on the inference that increase in net assets plus known nondeductible expenditures must have come from currently unreported income. The quality of the proof, its weight and the burden of proving it may differ between criminal, civil with fraud penalties, and the simple civil proceeding for tax only without fraud. But in each, the inference of unreported income can be drawn only if, and the if is a big one, a starting, opening net worth statement is established with some reliability. See, Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; Fairchild v. United States, 5 Cir., 240 F.2d 944; Thomas v. Commissioner, 6 Cir., 223 F.2d 83; Thomas v. Commissioner, 1 Cir., 232 F.2d 520; Bryan v. United States, 5 Cir., 175 F.2d 223, affirmed 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335; Lee v. Commissioner, 5 Cir., 227 F.2d 181, certiorari denied 351 U.S. 982, 76 S.Ct. 1048, 100 L.Ed. 1497; Meyers v. United States, 134 F.Supp. 520, 133 Ct.Cl. 123, certiorari denied 352 U.S. 989, 77 S.Ct. 388, 1 L.Ed. 2d 368.

If the opening statement is not substantially reliable, the whole intricate house of cards falls. For then current expenditures for nondeductible purposes (income tax, living, family expenses, personal diversions etc.) and investment in new and added assets can just as reasonably be explained as coming from property already owned.

■ In establishing that opening net worth all types of assets (less liabilities) are included. Perhaps from a conceptual point of view, cash stands no differently than other property. But the history of these cases and human experience generally compels a recognition that cash is different. From ignorance, apprehension of bank deposits, furtive desire to conceal gains, ill-gotten or belonging to others, the sometimes irresistible response to the appeal of miserly greed or a variety of other reasons grounded in the everyday experience of mankind, people do hoard cash. Physically, in contrast to other accumulations, it is easy to hoard and with some reasonable security. And, negotiable as it is by the simple act of delivery, when spent, unlike checks or drafts, it leaves no telling prints to track from whence it came.

Consequently the amount of cash available and on hand at the opening assumes considerable importance. Certainly does it where the evidence, as here, on the record demonstrates that the profitable business came from cash received, disbursed and held.

But this was not established here at all. The Tax Court's sole statement, note 2, supra, is actually an affirmative holding that no such finding has been made either by it or the Commissioner.[7] Without this essential ingredient in the opening net worth statement it is really not a net worth case at all. There must be a beginning and an end and the creature cannot survive if headless for "the application of the cash expenditure method * * * with neither a head nor a tail to it will not do", Olinger v. Commissioner, 5 Cir., 234 F.2d 823, 824.

■ While the establishment of opening net worth and the factual ingredients (cash, etc.) which comprise it, like any other fact, is subject to the usual vagaries of proof which allows the trier on the evidence under applicable legal gauges for a criminal, civil with fraud, or civil only proceeding, to draw the inferences of the existence, nonexistence, or

---

**7.** So far we have assumed that the Tax Court sustained the presumptively correct finding of the Commissioner. But the Commissioner's brief in the Tax Court, stating:

"The respondent has determined that

there was no undeposited cash on hand on December 31, 1945, December 31, 1946, and December 31, 1947"

indicates that the Tax Court has itself held that the Commissioner's finding was erroneous and unsupported.

value of the assets, the conclusion when reached must pass muster of the clearly erroneous concept.

■ In this light, the conclusion of the Tax Court fails. For the proof is utterly lacking to support the prime assumption that the cash was the same at the beginning as it was at the end. On the contrary, the proof showed that cash in large quantities was regularly received and kept and spent with much of it being traced into the orange grove operation and specific properties which are found in the net worth figures.

■ Without this assumption there was no implied finding (as an opening figure) by the Commissioner as to which the Taxpayer had the burden of demonstrating error. If the Commissioner can overcome the inherent difficulties of the net worth technique, Holland v. United States, supra, by a mere pronouncement that as to any item in the net worth statement there is no showing that it had significantly changed from alpha to omega, " * * * there would seem to be no reason as a general proposition, why similar guesses should not be made as to each of the constituent elements comprising the taxpayers' net worth. Under these circumstances, the entire net worth technique becomes nothing but an elaborate accounting sham lending a semblance of system and logic to a determination of deficiency which could have no greater validity than the original guesswork upon which it was based," Thomas v. Commissioner, 1 Cir., 232 F.2d 520, 526.

While the process is not as ingenuous as it would be had that approach been followed, since the opening cash position is fixed by reverse English from the closing figure, the result is the same as though the Commissioner or Tax Court had arbitrarily selected the $4500 figure in the first place. What sum, on this record, the Tax Court might have fixed had it been done that way, or what sum may be fixed on the record to be made on remand, we need not say. But it is clear

that a finding of $4500 would have been absolutely baseless in the record and evidence, and without hesitation we would, as did the First and Sixth Circuits in their Thomas cases [8] have set it aside. And we agree that, "The presumption which favors the determinations of the Commissioner is not to be regarded as meaning that any arbitrary figure assigned to the cash on hand account without support in the record must nonetheless be treated as conclusive in the absence of an affirmative showing by the taxpayer of the correct amount," Thomas. v. Commissioner, 1 Cir., 232 F.2d 520, 524.

Bond v. Commissioner, 4 Cir., 232 F.2d 822, certiorari denied 352 U.S. 878, 77 S.Ct. 100, 1 L.Ed.2d 79, does not stand opposed to what we and those Courts conclude. There Taxpayer's sales business required a substantial inventory of goods (coal, oil, etc.) and, as in such establishment generally, there was a reasonable basis for assuming a relative consistency in inventory which, if true, would be without final significance in comparative net worths. Here, of course, Taxpayer had no stock in trade and in no sense could the collection, receipt, keeping and paying out of money in the numbers racket make the cash his inventory.

The key to this net worth case was cash at the opening. The Taxpayer demonstrated that allocating $4500, either expressly or impliedly, is a completely arbitrary assumption. Taxpayer has carried his burden of establishing that this figure and the legal concept of thus neatly turning the tables on Taxpayer out of which it arose was patently erroneous. He need go no further. Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623, 629; Durkee v. Commissioner, 6 Cir., 162 F.2d 184, 187, 173 A.L.R. 553; Burford-Toothaker Tractor Company v. Commissioner, supra.

The cause must be remanded to the Tax Court for further and other consistent proceedings.

Reversed and remanded.

8. Thomas v. Commissioner, 1 Cir., 232 F.2d 520; Thomas v. Commissioner, 6 Cir., 223 F.2d 83.