Arthur G. Burdorf and Weltha O. Burdorf v. Commissioner.
Burdorf v. Commissioner
Docket No. 75489.
United States Tax Court
T.C. Memo 1961-315; 1961 Tax Ct. Memo LEXIS 32; 20 T.C.M. (CCH) 1621; T.C.M. (RIA) 61315; November 20, 1961
*32 Louis E. Ackerson, Esq., and Robert L. Ackerson, Esq., for the petitioners. Hubert E. Kelly, Esq., and Bart A. Brown, Jr., Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: The respondent determined deficiencies in income tax and additions to tax for the calendar years and in the amounts as follows: Additions to Tax, I.R.C. 1939
Sec. 294
Sec. 294
Year
Deficiency
293(b)
(d)(1)(A)
(d)(2)
1951
$1,804.26
$ 902.13
$173.81
$115.87
1952
5,425.32
2,712.66
496.84
331.23
1953
1,571.68
785.84
147.78
98.53 Respondent concedes error in determining that petitioners are liable for the additions to tax under section 294(d)(2). The issues remaining for decision are: (1) Whether the taxable income of the petitioners was understated for any of the years 1951, 1952, or 1953; (2) whether the petitioners are liable for additions to tax for fraud for such years; and (3) whether the petitioners are liable for the additions to tax for those years for failure to file declarations of estimated tax. Findings of Fact Arthur G. Burdorf, sometimes hereinafter referred to as the petitioner, and Weltha *33 O. Burdorf are husband and wife. They reside in Louisville, Kentucky, and filed joint Federal income tax returns for the years 1951, 1952, and 1953 with the collector or director of internal revenue at Louisville, Kentucky. Arthur has been employed for many years by Burdorf's, Incorporated (hereinafter referred to as the corporation), a Kentucky corporation engaged in the retail sale of furniture in Louisville, Kentucky. During the years 1951 through 1953 he was president and general manager of the corporation and one of its principal stockholders. Petitioner's duties consisted of the purchasing of stock, management of show rooms and windows, controlling inventory, supervising salesmen, checking invoices, signing checks, and supervising the bookkeeping department. During the years 1951 through 1953 the petitioner supervised the taking of inventory of the corporation and personally maintained the only inventory record listing the various stock items, their location and cost. He made daily increases and decreases to this inventory record on the basis of the original sales orders and invoices to reflect the sales and purchases of furniture. Periodically, various employees, under the *34 petitioner's supervision, took a physical count of the inventory. At the end of each year petitioner gave the bookkeeper the total inventory figure. In each of the years 1951 through 1953 the corporation paid the petitioners' Kentucky state income taxes in the amounts as follows: Year
Date Paid
Amount
1951
4/ 4/51
$168.32
1952
4/14/52
209.45
1953
3/21/53
198.23
In the returns filed by the corporation for its fiscal years ending January 31, 1952, through January 31, 1954, deductions were claimed by it for the above amounts as expenses. The petitioners also claimed deductions for such Kentucky state income taxes in these amounts in their joint returns for the calendar years 1951, 1952, and 1953. The petitioner did not reimburse the corporation for such payments. The petitioner signed the corporation's checks with which these payments were made. On July 9, 1952, the petitioner borrowed $19,500 from the corporation. The assets owned by the petitioners at the end of the years 1950 through 1953 were as follows: AS OF DECEMBER 31
1950
1951
1952
1953
Cash on hand
$ 500.00
$ 500.00
$ 500.00
$ 500.00
Checking account
7,113.58
13,614.07
15,422.65
25,649.83
Savings account
4,776.85
5,523.50
6,317.00
7,169.25
Stocks and bonds
24,079.15
24,564.90
24,575.05
24,575.05
Residence
12,000.00
12,000.00
35,439.20
35,439.20
New appliances
1,160.00
1,160.00
Piano
500.00
3,025.00
3,025.00
3,025.00
Automobiles
4,730.24
4,730.24
4,730.24
4,730.24
Checks in transit, corporation
216.60
1,692.10
4,513.52
347.20
Accounts receivable, corporation
2,669.80
Fur coat
1,250.00
Total assets
$56,586.22
$65,649.81
$95,682.66
$103,845.77
*35 The petitioners paid Federal income taxes in the years 1951, 1952, and 1953 in the respective amounts of $1,462.86, $1,694.10, and $1,662.34. During the years 1951 through 1953 the personal living expenditures of petitioners by check and by cash were in the amounts as follows: Living
Living
Expenses
Expenses
Year
by Check
by Cash
1951
$2,251.96
$2,500.00
1952
2,087.25
2,500.00
1953
1,995.50
2,500.00
In 1952 petitioners realized nontaxable income of $33.13 from an insurance refund and a deferred profit on the sale of their residence in the amount of $11,715. The petitioners had cash on hand on January 1, 1951, in the amount of $500. They had the same amount of cash at the end of each of the years 1951, 1952, and 1953. The petitioners had the following amounts of net income in the taxable years: Year
Income
Reported
Unreported
1951
$15,278.41
$8,973.64
$ 6,304.77
1952
24,566.07
8,947.70
15,618.37
1953
14,320.95
8,846.52
5,474.43
At least a part of the deficiency for each of the years 1951, 1952, and 1953 was due to fraud with intent to evade tax. The petitioners did not file a declaration of estimated *36 tax for 1951, 1952, or 1953. Their failure to file such declarations was not due to reasonable cause. Opinion The respondent determined the deficiencies by the net worth method. This method requires an ascertainment of the assets and liabilities of the taxpayers at the beginning and end of each of the taxable years and a comparison to determine the increases in net worth during the period to which are added the amounts of nondeductible living expenses and income taxes paid during the period. The petitioners attack the respondent's use of the method. However, they concede that practically all the assets listed by the respondent are correct and that the computation is correct except for certain items hereinafter discussed. The petitioners argue that the respondent has the burden of proof where a net worth computation is relied upon and that the respondent is required to show a likely source of income. The burden of proof, as far as showing error in the deficiencies in tax is concerned, is upon the petitioners. Rule 32, Tax Court Rules of Practice.
The respondent, by amended answer, alleges that the unreported income was realized from the corporation. The respondent argues *37 that since the petitioner was an officer of the corporation and in control of its inventory records, he was in a position to divert receipts of the corporation to himself. The respondent has shown certain instances in which checks or cash received at the office of the corporation were turned over to the petitioner without being recorded as income to the corporation. While these amounts were not large in relation to the total sales, these examples indicate the possibility of larger diversions which have not been traced. For example, a former bookkeeper for the corporation testified that a customer paid in cash a bill of less than $100 for which she found no account receivable on the books and that the petitioner took the money and explained that he had sold some obsolete furniture from the warehouse. Also, that cash received on another sale of some $475 in 1951 was not deposited to the corporation's account and the bookkeeper was informed that the petitioner had taken the cash. The bookkeeper also said that the petitioner took checks received in payment of freight loss claims. It is stipulated that the petitioner had certain personal state income taxes paid from the corporation's bank *38 account and that such amounts were claimed as deductions both by the corporation and the petitioners on their tax returns. The failure of the respondent's agents to find the exact sources of all the increases in net worth proves nothing more than that they were well hidden. Thomas v. Commissioner, 223 F. 2d 83, at p. 86 (C.A. 6, 1955). The petitioner contends that the net worth statement introduced by the respondent is erroneous in certain particulars and that if effect is given to the corrections he says should be made, the result will be that the income reported on the returns will be shown to be correct. The principal items he says should be corrected are (1) the amount of cash on hand at the beginning of 1951, (2) the inclusion as an asset of a debt due from his son-in-law which was paid in 1952 and 1953, and (3) certain household furniture which he sold in 1951 and 1952. In addition, he contends that the respondent's computation has overestimated the living expenses of the family for the taxable years. The petitioner alleges that he had a cash fund amounting to $24,000 at the beginning of 1951. From this he says he expended $4,000 in 1951, $11,000 in 1952, and *39 $4,000 in 1953, leaving $5,000 in the cash fund at the end of the taxable period. According to his statement, he kept the money at home where he had a recess in the foundation secure against fire and high water. He testified his wife and daughter knew of this cash; that the money was accumulated from 1919 until this time; it was derived from a soldier's bonus from World War I, a repayment from his son-in-law of a loan for purchase of a car, proceeds of cashing checks in the period 1945 to 1950, an inheritance of $1,500 received by Weltha Burdorf in 1949, proceeds of a mortgage collected after 1939, payments for board made by the petitioners' daughter and her husband, repayment by the daughter of a charge account, and proceeds of the sale of a car. According to the petitioner the disbursements made form this cash fund in the taxable years included a partial payment of $1,000 on a piano, cash living expenses of $1,530.23, $1,440.63, and $1,442.28 in 1951, 1952, and 1953, respectively, small amounts of cash deposited in his savings account in 1952 and 1953, cash of $2,150 deposited in his checking account in 1952, cash of $6,412 deposited in 1952 to the credit of the corporation, and *40 payment of $1,250 for a fur coat in 1953. In a number of cases in which the respondent has determined income by measuring increases in the taxpayer's net worth we have been faced with the allegation of the taxpayer that he had a large hoard of cash at the beginning of the taxable period. For example, Meyer J. Safra, 30 T.C. 1026 (1958); J. K. Vise, 31 T.C. 220 (1958), affd. 278 F. 2d 642 (C.A. 6, 1960); Baumgardner v. Commissioner, 251 F. 2d 311 (C.A. 9, 1957), affirming a Memorandum Opinion of this Court. There are difficulties both of proving and of disproving the presence of such hoards. Cash may be secreted by persons who are distrustful of banks, or who need large bankrolls for gambling operations. The petitioner, however, maintained checking and savings accounts, had over $7,500 in Government bonds, and held several stocks in addition to his ownership of stock in the corporation. There is no purpose apparent, nor did his testimony indicate any purpose, in his alleged hoarding of cash. Furthermore, he said his wife and daughter knew he had this cash, but neither the wife nor daughter was produced as a witness, nor was their *41 absence explained. It was highly desirable that they appear and corroborate, if they could, the existence and amount of the hoard, the receipt of the inheritance mentioned by the petitioner and the payments for board, the charge account and repayment of a car purchase loan described by the petitioner. Also, they could presumably have verified the furniture sales in 1951 and 1952 and the amounts of living expenses paid in cash. The nonappearance of these witnesses, without explanation of their absence, leads to the inference that their testimony might not have been helpful or corroborative. A part of this fund is said to be from board paid by the daughter and her husband at $75 per month to the extent of $3,700 for a period in the years 1943 to 1947. There should have been some corroboration of this. Although the son-in-law testified on another matter, he was not asked about this. There are other circumstances present which are at least inconsistent with the cash hoard testimony. If the petitioner had this fund and used $4,000 of it in 1951, he must have had some $20,000 left at the beginning of 1952. Yet in July of that year he borrowed $19,500 from the corporation. The necessity *42 for such a loan is not apparent and no explanation is offered. When the case was under investigation the petitioner was asked about his cash on hand and said that he had some $500 in cash. Later he said he had more, but did not commit himself to giving the respondent's agents a definite figure until after the deficiencies were determined. By that time he could calculate the amount necessary to cover the unreported income determined by the respondent. In addition to these circumstances we may say that we are not persuaded by the petitioner's testimony upon matters as to which he was the sole witness. We hold that the petitioner has not proved the existence of such an amount of cash on hand. The respondent has not allowed any cash on hand in determining the net worth increases. In view of the agents' evidence concerning the petitioner's statements at the time of the investigation, we find that the petitioner had $500 in cash at the beginning of 1951 in addition to the other items shown in the net worth statement. See Thomas v. Commissioner, 232 F. 2d 520 (C.A. 1, 1956). This amount of cash should be regarded as present throughout the taxable years, as the petitioner says *43 he had $5,000 in cash at the end of 1953. Inclusion of this item will not alter the computation of the net worth increases. The petitioner next contends that his son-in-law, William Talley, owed him $1,079.71 at the beginning of 1951, and paid $663 of this in 1952 and $416.71 in 1953. Talley testified that he owed the petitioner some money and paid it but was vague as to the amount involved and paid and as to the exact date of the loan. His testimony was to the effect that the money was borrowed in 1951. No contemporaneous record of the transaction was offered in evidence. The petitioner has failed to prove the existence of this asset as of the beginning of 1951. The petitioner next alleges that he sold furniture from his home for $1,335 in 1951 and $2,896 in 1952. He testified to the items sold, the date of each sale, and gave the names of some of the purchasers. He stated that the receipts were deposited to his personal bank account except for one item of $1,148 received in 1952 which was deposited in the corporation's bank account to his credit on the books of the corporation. The petitioner produced none of these buyers as witnesses to corroborate his testimony. In the absence *44 of some verification the petitioner has not borne his burden of proof as to the amounts realized from these transactions. The petitioner contends that the respondent's computation includes too large an amount for living expenses paid in cash. The respondent estimated such expenses as amounting to $2,500 each year. The petitioner says that the actual amounts were $1,530.23, $1,440.63, and $1,442.28 for 1951, 1952, and 1953, respectively. The parties are agreed as to the amounts of living expenses paid by check. The totals, according to the petitioners, ranged from $3,438 to $3,782 per year. The respondent's total figures are approximately $1,000 each year higher than the petitioner's estimates. This is a point upon which the testimony of the petitioner Weltha Burdorf might have been helpful. The petitioners' return reported a total income of nearly $9,000 per year. We find that the respondent's estimate of living expenses paid by cash is the more reasonable and conclude that the petitioners have not shown error in that determination. The respondent determined that at least a part of the deficiency in tax for each of the years 1951 through 1953 was due to fraud with intent to evade *45 tax. The burden of proof of fraud is upon the respondent, pursuant to section 1112 of the Internal Revenue Code of 1939. Fraud must be proved by clear and convincing evidence. It was orally stipulated that checks on the corporation's account were issued in payment of the petitioners' Kentucky state income taxes for each of the years 1950, 1951, and 1952; that the petitioner signed these checks; that the amounts paid were claimed as deductions by the corporation on its income tax returns for the fiscal years in which the checks were issued; that the petitioners also claimed deductions for such taxes in such amounts in their returns for the taxable years 1951, 1952, and 1953, respectively; and that the petitioner did not reimburse the corporation for such payments. The bookkeeper for the corporation testified that the petitioner instructed her to pay these taxes out of the corporation's account and that he did not tell her what account to charge them against, but told her to let the company pay them. The bookkeeper was inexperienced. The petitioner signed the checks for the corporation and has not disputed the testimony. This amounts to convincing evidence of fraud. The petitioner *46 has not shown that he gave any instructions to have the payments charged to his personal account, nor has he offered any other explanation of these transactions to show that they were not fraudulent. In addition to the foregoing the omission of substantial amounts of income each year of the three years involved without adequate explanation tends to show a consistent pattern of understatement and may be evidence of fraud. Also, there is evidence of certain other overt acts of fraud by the petitioner. There is testimony of the bookkeeper that the petitioner received the proceeds of a cash sale of old merchandise of the corporation and that the took checks or cash received by the corporation in payment of loss claims. From this evidence we find that at least a part of the deficiency for each year was due to fraud with intent to evade tax. The respondent determined for each year an addition to tax pursuant to section 294(d)(1)(A) for failure, without reasonable cause, to file a declaration of estimated tax. The petitioners have not shown that they filed such a declaration or that their failure to file was due to reasonable cause. The respondent's determination must be sustained. *47 Decision will be entered under Rule 50.