T.C. Memo. 1995-553


UNITED STATES TAX COURT


GARY M. AND TRUDY J. WEICHLEIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 26374-93.          Filed November 21, 1995.


<u>Murray H. Falk</u>, for petitioners.


<u>Linas N. Udrys</u>, for respondent.


MEMORANDUM OPINION


NAMEROFF, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]  Respondent determined a deficiency in petitioners' 1990
Federal income tax in the amount of $6,753, plus an accuracy-
related penalty under section 6662(a) in the amount of $1,351.

_____

        [1]     All section references are to the Internal Revenue Code
in effect for the year at issue.  All Rule references are to the
Tax Court Rules of Practice and Procedure.

The issue for decision is whether petitioners are entitled to deduct "away from home" expenses. Respondent failed to address the accuracy-related penalty issue in her brief or reply brief, and we conclude that respondent has conceded that issue. See Rule 151(e)(5); Money v. Commissioner, 89 T.C. 46, 48 (1987).[2]

This case was submitted fully stipulated, and the stipulated facts are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Catheys Valley, California, at the time the petition was filed. Hereinafter, all references to petitioner are to petitioner Trudy J. Weichlein.

Petitioner was born in Santa Barbara, California, and graduated from high school in Saugus, California, in 1969. Petitioner married George M. Weichlein (Mr. Weichlein) in 1967, and they have one daughter born in 1971. In 1978, petitioner moved with her husband and daughter from Boron, California, to Catheys Valley, California. Boron is located in southern California near Edwards Air Force base and within 50-60 miles of Victorville, California. Catheys Valley is located "just north" of the geographic center of California, due east of San Jose.

---

[2] Even if we did not treat respondent's failure to brief this issue as a concession, we would find for petitioners on this issue based upon their reliance on a competent, experienced return preparer in claiming these deductions.

The record is silent as to the reason for the move to Catheys Valley.

Petitioner and her family have resided in Catheys Valley since 1978. Petitioner and her husband own real property, are registered to vote, and have registered their vehicles in Catheys Valley since 1978. Petitioner has maintained a checking account within 10 miles of Catheys Valley since 1978. Petitioner's daughter attended public schools located in Catheys Valley from 1978 through 1986 and continues to reside with petitioner in Catheys Valley. Since retirement in 1986, Mr. Weichlein has resided in the family residence in Catheys Valley.

Petitioner was occupied full time as a homemaker from the time she moved to Catheys Valley in 1978 until September 1979, at which time she accepted employment as a dispatcher[3] for Desert Construction Co. (Desert) at a road construction site (at which her husband was also employed) north of Bishop, California (approximately 115 miles from Catheys Valley). She commuted daily (with her husband) between their residence in Catheys Valley and that location (approximately 1-1/2 to 2 hours each way) for more than 1 month during which they worked 8-hour days.

Petitioner was also employed as a dispatcher by Desert at a road construction site in Trona, California (approximately 265

_____

[3] The record does not reflect petitioner's training or employment history between 1969 and 1978.

miles from Catheys Valley), from November of 1979 until February of 1980 and at a road construction site at Ocitillo, California (near the Mexican border and approximately 515 miles from Catheys Valley), from April through October of 1980. She was unemployed from February to April 1980, during which time she resided at her residence in Catheys Valley.

The following table illustrates petitioner's employment history for the years 1979 through 1990. The parties have stipulated that petitioner expected each of these jobs, generally, to last only for a short period of time and that for each job, she remained overnight near the job site during the work week because of its distance from Catheys Valley, and returned to her residence in Catheys Valley on most weekends.

| Employer | Position Location | Distance[1] | Start date | End date | Approximate Duration |
|---|---|---|---|---|---|
| Desert | Dispatcher Bishop, Cal. | 115 | Sept. 1979 | Oct. 1979 | 2 months |
| Desert | Dispatcher Trona, Cal. | 265 | Nov. 1979 | Feb. 1980 | 4 months |
| Desert | Dispatcher Octillo, Cal. | 515 | Apr. 1980 | Oct. 1980 | 7 months |
| Desert | Hot plant operator Barstow, Cal. | 325 | Nov. 1980 | Dec. 1980 | 2 months |
| [2] | Hot plant operator Baker, Cal. | 385 | Apr. 1981 | Nov. 1981 | 8 months |
| [2] | Hot plant operator Baker, Cal. | 385 | Apr. 1982 | May 1982 | 2 months |
| [2] | Hot plant operator Fort Irwin, Cal. | 335 | May 1982 | June 1982 | 2 months |
| [2] | Hot plant operator Riverside, Cal. | 300 | June 1982 | Dec. 1982 | 6 months |
| [2] | Hot plant operator Inyokern, Cal. | 245 | Mar. 1983 | May 1983 | 3 months |
| [2] | Hot plant operator California City, Cal. | 225 | July 1983 | Aug. 1983 | 2 months |
| [2] | Hot plant operator Inyokern, Cal. | 245 | Oct. 1983 | Dec. 1983 | 3 months |
| [2] | Hot plant foreman Victorville, Cal. | 330 | Apr. 1984 | Aug. 1984 | 5 months |
| [2] | Hot plant foreman Inyokern, Cal. | 245 | Sept. 1984 | Nov. 1984 | 3 months |
| [2] | Hot plant foreman Dunmovin, Cal. | 175 | Apr. 1985 | Nov. 1985 | 8 months |
| [2] | Hot plant foreman Inyokern, Cal. | 245 | Apr. 1986 | April 1986 | 1 month |
| [2] | Hot plant foreman Independence, Cal. | 155 | May 15, 1986 | May 26, 1986 | 2 weeks |
| [2] | Hot plant foreman Victorville, Cal. | 330 | May 26, 1986 | June 20, 1986 | 4 weeks |
| [2] | Hot plant foreman Inyokern, Cal. | 245 | June 23, 1986 | July 5, 1986 | 3 weeks |
| [2] | Hot plant foreman Victorville, Cal. | 330 | July 6, 1986 | July 12, 1986 | 1 week |
| [2] | Crane oiler San Francisco, Cal. | 150 | Nov. 1986 | Nov. 1986 | 1 month |
| [2] | Crane oiler Sacramento, Cal. | 130 | Dec. 1986 | Mar. 1987 | 4 months |
| [2] | Pile dynamics engineer Stockton, Cal. | 85 | Dec. 1986 | Mar. 1987 | 4 months |
| [2] | Hot plant foreman Victorville, Cal. | 330 | Apr 1987 | May 1987 | 2 months |
| [2] | Hot plant foreman Needles, Cal. | 390 | May 1987 | Sept. 1987 | 4 months |
| [2] | Hot plant foreman Inyokern, Cal. | 245 | Oct. 1987 | Nov. 1987 | 2 months |
| [2] | Hot plant foreman Victorville, Cal. | 330 | Jan. 3, 1988 | Feb. 19, 1988 | 7 weeks |
| [2] | Hot plant foreman Needles, Cal. | 390 | Feb. 25, 1988 | June 17, 1988 | 4 months |
| [2] | Hot plant foreman Laughlin, Nev. | 450 | July 12, 1988 | Aug. 20, 1988 | 6 weeks |
| [2] | Hot plant oiler Bakersfield, Cal. | 145 | Aug. 22, 1988 | Oct. 13, 1988 | 7 weeks |
| [2] | Hot plant oiler Coalvale, Nev. | 200 | Oct. 31, 1988 | Dec. 8, 1988 | 6 weeks |
| Fontana | Equipment oiler Lucerne Valley, Cal. | 245 | Dec. 9, 1988 | May 1989 | 6 months |
| Fontana | Hot plant foreman Victorville, Cal. | 330 | June 1989 | Nov. 1989 | 6 months |
| Fontana | Hot plant operator Anaheim, Cal.[3] | 400 | Jan. 1990 | June 3, 1990 | 5 months |
| Fontana | Hot plant operator Victorville, Cal. | 330 | June 4, 1990 | Dec. 21, 1990 | 7 months |

---

[1] This column represents the number of miles from the construction site to Catheys Valley. We could not locate Coalvale, Nev., but there is a Coaldale, Nev., approximately 77 miles north and west of Bishop. We were also unable to locate Ft. Irwin. Except for Bishop, San Francisco, Sacramento, Stockton, and probably Coaldale, Independence, and Inyokern, all of the locations are either generally in the Victorville/Barstow vicinity or further from Catheys Valley than Catheys Valley is from Victorville.

[2] The stipulation of facts does not identify petitioner's employer for these periods of employment.

[3] Anaheim is 73 miles from Victorville.

When petitioner was employed as a hot plant operator[4] in November and December 1980 in Barstow, California, she became a member of the International Union of Operating Engineers, Local 12 (Local 12). Local 12 has jurisdiction over all of California south of Bakersfield, Nevada, and over part of Arizona. The hiring of hot plant operators is done entirely through union halls. During periods of unemployment, petitioner registered for work with Local 12 and occasionally with Local 3, which has jurisdiction over California north of Bakersfield and over Oregon and Washington. The nearest union hall to petitioner is located in Atwater, California, approximately 36 miles from Catheys Valley.

As a hot plant operator and foreman, petitioner is required to use, and therefore owns, various tools including wrenches, hammers, prying bars, voltage meters, tool chests, and incidental tools. Petitioner takes these tools with her to each job location

---

[4] A hot plant is a transportable apparatus containing four components (feeder, weigh belt, driver drum, and silo) and a control room. The hot plant produces hot asphalt from dried and graded crushed rock and heated graded oil or sand for road paving. The hot plant is normally located near the pit producing the rock. The asphalt is transported by truck from the hot plant to the portion of the road upon which it is laid. Hot plant operations are seasonal in the high areas of California, Nevada, and Arizona, because the outside temperature must be 60 degrees Fahrenheit and rising to lay asphalt on public roads. The hot plant operator controls the delivery of materials to the plant, the processing of materials in the plant, the mixture of the asphalt, the delivery of the asphalt to trucks at the plant, and the dispatch of trucks to the job (in the absence of a dispatcher), and performs and supervises the repair and maintenance of the plant.

and stores them at her residence in Catheys Valley when she is not employed elsewhere.

When petitioner was employed by Fontana Paving Co. (Fontana) in Lucerne Valley from December 8, 1988, through May 1989, she brought her recreational vehicle to Lucerne Valley and resided in it during her period of employment there, except for those weekends she returned to Catheys Valley. During her employment in Lucerne Valley, petitioner learned to fly an airplane and obtained a private pilot's license.

When petitioner was hired in June 1989 by Fontana to work in Victorville, her employment was expected to last for 2 months while David Cooley was running the hot plant in Lucerne Valley. Because additional work at the Lucerne Valley plant required Mr. Cooley's presence, petitioner remained at Victorville until November 1989. While petitioner was employed in Victorville, she rented living accommodations from Alison Criffield and stored her recreational vehicle on Ms. Criffield's property. Petitioner stayed in Victorville during the week because of its distance from Catheys Valley and returned to Catheys Valley during most weekends. When Mr. Cooley returned to the Victorville plant in November 1989, petitioner returned to her residence in Catheys Valley, with no expectation of being rehired to work at or near Victorville in the foreseeable future. Petitioner put her name in at the hiring halls.

In January 1990, petitioner was rehired by Fontana through Local 12. She was instructed to report to Vernon Paving Co. (Vernon)[5] at its hot plant in Anaheim, California. Petitioner was informed that she would run the Anaheim hot plant for 2 weeks, within which time Vernon expected to have another operator to replace the operator who had quit without notice. She was told that she would then go to Fontana's Victorville hot plant to replace Mr. Cooley, who was absent for a short period of time. Understanding that her employment in Anaheim would last 2 weeks, petitioner drove to Victorville on January 1, 1990, and made arrangements to stay with Ms. Criffield in Victorville.[6] Petitioner resided with Ms. Criffield until February 27, 1990, except for those occasions when she stayed overnight in Anaheim or in Catheys Valley.

On January 3, 1990, Walter Bludder, supervisor of the Vernon hot plants located in Anaheim, Irvine, and Irwindale, instructed petitioner to train Steve Guerrero to operate the Anaheim plant. Although the training was expected to last 2 weeks, the training did not go well and extended into February. On February 12, 1990, petitioner was informed by Jim Collie, supervisor of the Victorville

---

[5]     Vernon and Fontana were, at that time, both owned by Boral Resources. Petitioner was hired through the union hall by Fontana, which rented her services to Vernon. Payments for petitioner's services were made to Fontana on purchase orders from Vernon to avoid the necessity of further union hall involvement.

[6]     Petitioner could stay with Ms. Criffield for $60 per week as opposed to $40 per night in Anaheim.

plant, that he was bringing her to Victorville even though Mr. Guerrero had not developed the skills necessary to operate the Anaheim plant. On February 18, 1990, Mr. Collie told petitioner to return to the Anaheim plant.

On April 9, 1990, petitioner was informed that she was to train a new person, Norman Bateman, to run the Anaheim plant. On April 23, 1990, petitioner was informed that she would run the Victorville plant beginning on June 4, 1990, for a short period of time because Mr. Cooley was leaving that same day to run the Lucerne Valley plant. On June 1, 1990, petitioner was told to report to the Victorville plant on June 4, 1990.

On or about February 27, 1990, petitioner brought her recreational vehicle to the Adelanto RV park near Victorville and resided in it until December 21, 1990, except for those occasions when she stayed overnight in Anaheim hotels or her residence in Catheys Valley. From January 2, 1990, through June 1, 1990, petitioner drove, almost daily, between Victorville and Anaheim. In addition, petitioner was frequently sent to hot plants located in Upland, Irwindale, and Irvine to conduct in-house training of hot plant operators and to conduct quality tests either en route between Anaheim and Victorville or from Anaheim during this period. Petitioner either drove her automobile or flew her airplane, which she purchased on or about May 1990, between Victorville and Catheys Valley on most weekends.

From June 4 to December 21, 1990, petitioner was employed as hot plant operator in Victorville.  At the time she entered that employment, it was expected to last a short period of time.  While she was employed in Victorville, petitioner remained there during the week because of its distance from Catheys Valley and returned to Catheys Valley on most weekends.

During 1990, petitioner was the primary provider for her family.  Petitioner and Mr. Weichlein continued to incur and pay mortgage payments, real estate taxes, utility costs, and all other expenses of owning and maintaining their residence in Catheys Valley.

On the Schedule A attached to petitioners' Form 1040 for taxable year 1990, petitioners claimed unreimbursed employee expenses in the amount of $24,117.[7]  A portion of this amount represents travel, meals, and lodging expenses incurred by petitioner in connection with her employment.  Specifically, petitioner claimed rent in the amount of $3,143; meals in the amount

---

[7]    The parties stipulated that $136 for work boots, $243 for work tools, and $974 for union dues are allowable as deductions under sec. 162(a), subject to the sec. 67(a) 2-percent limitation.  This will be reflected in the Rule 155 computation.

of $5,450;[8] mileage in the amount of $7,708;[9] and airplane expenses in the amount of $10,006.[10]

Respondent disallowed the expenses claimed by petitioner for meals, lodging, and travel.  Respondent contends that during taxable year 1990, petitioner's "tax home" was in Victorville, California.  Thus, respondent argues that petitioner was not "away from home" and the expenses are not deductible.  Respondent concedes on brief, however, that petitioner, when working in Anaheim, was temporarily away from her "tax home" in Victorville, and therefore is entitled to deductions for appropriate travel expenditures, if any, in connection therewith.  Alternatively, respondent contends that if petitioner's employment in Victorville is considered "temporary", the expenditures incurred for weekend commutes to Catheys Valley lack a business purpose and are not deductible.

Petitioner contends that the travel expenditures were incurred while she was "away from home" and that her "tax home" was in Catheys Valley.  In addition, petitioner contends that respondent's alternative issue was not raised in the notice of

---

[8]    This amount represents 262 days at $26 per day, less 20 percent as required by sec. 274(n).

[9]    This amount represents 29,648 miles at 26 cents per mile.

[10]    This amount represents $1,215 for fuel, $1,929 for insurance, $1,726 for interest, $625 for tie-down fees, $1,366 for other expenses, less $442 for personal use, and $3,796 for depreciation, less $209 for depreciation attributable to personal use.

deficiency or the pleadings and should not be considered by the Court.  However, if the alternative issue is considered, petitioner argues that respondent bears the burden of proof on this "new issue" and has failed to carry that burden.

We begin by noting that determinations by the Commissioner are presumed correct, and the taxpayer has the burden of proof to overcome that presumption.  Rule 142(a).  The fact that the case is fully stipulated does not change the burden of proof.  Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991).

Section 162(a)(2) allows taxpayers to deduct "the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * traveling expenses (including amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business".  The Supreme Court has established a three-prong test for allowing deductions under section 162(a)(2).  The expense must be (1) reasonable and necessary, (2) incurred while away from home, and (3) incurred in the pursuit of a trade or business.  Commissioner v. Flowers, 326 U.S. 465, 470 (1946).

As a general rule, if a taxpayer is employed permanently or for an indefinite time away from his usual abode, "home" for the purposes of section 162(a)(2) means the vicinity of the taxpayer's principal place of employment and not where his or her personal

residence is located.  Coombs v. Commissioner, 608 F.2d 1269, 1275 (9th Cir. 1979), affg. in part and revg. in part 67 T.C. 426 (1976); Mitchell v. Commissioner, 74 T.C. 578, 581 (1980).  However, under the exception to this rule, a taxpayer's personal residence may be the "tax home" if the principal place of business is "temporary", rather than "indefinite".  Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958).  The reason for not shifting the taxpayer's "tax home" to the temporary place of employment is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode".  Kroll v. Commissioner, 49 T.C. 557, 562 (1968).

A place of business is a "temporary" place of business if the employment is such that "termination within a short period could be foreseen".  Albert v. Commissioner, 13 T.C. 129, 131 (1949).  Conversely, employment is "indefinite", "substantial", or "indeterminate" if "its termination cannot be foreseen within a fixed or reasonably short period of time."  Stricker v. Commissioner, 54 T.C. 355, 361 (1970), affd. 438 F.2d 1216 (6th Cir. 1971).  If employment which is "temporary" at its inception becomes "substantial", "indefinite", or "indeterminate" in duration, the situs of the "tax home" is the location of the taxpayer's employment.[11]  Kroll v. Commissioner, supra.  Employment may change

---

[11]     The purpose of this rule is clear.  It is not reasonable to expect people to move to another location for a
(continued...)

from temporary to indefinite due to changed circumstances, or simply the passage of time. Norwood v. Commissioner, 66 T.C. 467, 470 (1976). Whether employment is temporary or indefinite is a question of fact. Peurifoy v. Commissioner, supra at 60-61. "No single element is determinative of the ultimate factual issue of temporariness". Norwood v. Commissioner, supra at 470.

The Court of Appeals for the Ninth Circuit, to which this case is appealable, has construed the "temporary versus indefinite" distinction as follows:

> An employee might be said to change his tax home if there is a reasonable probability known to him that he may be employed for a long period of time at his new station. What constitutes "a long period of time" varies with circumstances surrounding each case. If such be the case, it is reasonable to expect him to move his permanent abode to his new station, and thus avoid the double burden that the Congress intended to mitigate. * * * [Harvey v. Commissioner, 283 F.2d 491, 495 (9th Cir. 1960), revg. 32 T.C. 1368 (1959).]

We conclude herein that petitioner has failed to establish that she was away from home while living in Victorville during 1990.

This record is devoid of evidence to establish that petitioner had a business connection with Catheys Valley. Initially,

---

[11](...continued)
temporary job. Kasun v. United States, 671 F.2d 1059, 1061 (7th Cir. 1982). The exigencies of temporary employment may require the taxpayer to incur more substantial costs than might be incurred in employment of indefinite duration. Rosenspan v. United States, 438 F.2d 905, 912 (2d Cir. 1971). A deduction for these expenses eases the burden on taxpayers who must bear the expenses of living on the road while maintaining a personal residence. Id. at 912; Bochner v. Commissioner, 67 T.C. 824, 828 (1977).

petitioner and her husband resided in the Victorville area at Boron. They moved to Catheys Valley, but there is no evidence of any business purpose for such move, and we may therefore assume that the purpose for the move was personal. Nevertheless, with few exceptions, petitioner continued to accept employment in the southern California area, with most jobs being near Victorville or further from Catheys Valley than from Victorville; e.g. Octillo, California; Needles, California; Laughlin, Nevada.

The parties stipulated that each job petitioner accepted was for a short term and that petitioner had no anticipation of further employment by Fontana. We recognize that road or other construction or repair projects are commonly of limited duration. But if the employer is successful and has many projects, highly regarded, skilled employees will continue to be employed. It is in this context that we understand the parties' stipulations as to petitioner's expectation of future work, once a project was completed. Fontana was in the road construction business and petitioner was highly regarded by Fontana. The relationship between them was a continuing one, subject only to the availability of projects requiring her skills. Fontana's principal place of business and most of its operations were in the southern California area. Its headquarters were in Fontana, California, near San Bernardino.

Petitioner's only employer from 1988 through all of 1990 was Fontana or its sister corporation, Vernon.  While petitioner did work in Anaheim for a short period, she spent a majority of taxable year 1990 in Victorville.  We find that petitioner's principal place of business in 1990 was Victorville, California.  However, because she lacked any business ties to Catheys Valley, she was not "away from home" when she was living and working in the Victorville area. See Tucker v. Commissioner, 55 T.C. 783, 787 (1971).

Petitioner maintains that her employment with Fontana in the Victorville area was temporary because she intended to remain in the area for a short period of time.  In addition, petitioner contends that she worked at a series of temporary jobs, always returned to Catheys Valley whenever possible, and had maintained a residence in Catheys Valley since 1978.  However, because she has failed to show that she had any business prospects or ties in Catheys Valley, her work in Victorville did not take her "away from home" for purposes of section 162(a)(2).

Petitioner's ownership of a residence in Catheys Valley is not enough to justify a decision in petitioner's favor.  To do so would place petitioner's home where her heart lies and render section 162(a)(2) a vehicle by which to deduct the full spectrum of one's personal and living expenses.  See Bochner v. Commissioner, 67 T.C. 824, 828-829 (1977).  Petitioner's decision to retain her residence

in Catheys Valley, while employed in the Victorville area, was a personal decision.

Therefore, we conclude that petitioner is not entitled to deduct expenses incurred while living and working in the Victorville area, including expenses for travel back and forth to Catheys Valley.[12]  Because we have concluded that petitioner was not "away from home" during 1990, we need not address respondent's alternative argument that expenses incurred by petitioner for travel between Victorville and Catheys Valley were not reasonable.

Decision will be entered

under Rule 155.

---

[12]    While respondent has conceded that, if Victorville is petitioner's tax home, her employment in the Anaheim area was temporary, the record contains insufficient evidence to identify any amount of travel expense actually incurred in connection with such employment, other than petitioner's driving the 73-mile round trip "almost daily" between Jan. 2 and June 1. Accordingly, we allow petitioner a mileage deduction based upon 146 miles for 5 days per week for 22 weeks.