T.C. Memo. 2001-301

UNITED STATES TAX COURT

GARY WILSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16382-99.                    Filed November 14, 2001.

<u>Alan D. Irwin</u>, for petitioner.

<u>Angelique M. Neal</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BEGHE, <u>Judge</u>:  Respondent determined the following
deficiencies, late-filing addition, and accuracy-related
penalties with respect to petitioner's Federal income tax:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Accuracy-related Penalty Sec. 6662(a) |
|------|-----------|-------------------------------|--------------------------------------|
| 1992 | $5,642 | -- | $1,128 |
| 1993 | 5,146 | $519 | 1,029 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Respondent's determination in the notice of deficiency is presumed correct, and petitioner bears the burden of proving that it is incorrect. Rule 142(a).[1] The issues for decision[2] are whether petitioner (1) properly claimed deductions for travel expenses, (2) properly claimed deductions for miscellaneous business expenses, and (3) is liable for accuracy-related penalties and an addition to tax under sections 6662(a) and 6651(a), respectively. We sustain respondent's determinations, except that we allow some deductions in amounts less than claimed by petitioner for miscellaneous business expenses, resulting in reductions to the deficiencies, to be given effect in the Rule 155 computation.

---

[1]Sec. 7491 does not apply because respondent's examination was commenced before July 23, 1998.

[2] Petitioner presented no evidence to rebut respondent's determinations that petitioner failed to report unemployment compensation and interest income in 1993. Respondent's determinations are sustained.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated by this reference.

Petitioner resided in Cascade, Idaho, at the time of filing the petition.

Petitioner has been employed in the construction industry for 20 years. In 1987 petitioner began working for Kiewit Pacific Co. (Kiewit). Kiewit employed petitioner for most of 1990, all of 1991, all of 1992, most of 1993, and part of 1994. During 1992 and 1993, the years in issue, petitioner was employed by Kiewit as a demolition foreman, drilling crew foreman, part-time mechanic, and master mechanic. Petitioner's employment relationship with Kiewit has continued off and on through the time of trial.

In 1992 petitioner was employed by Kiewit at the following times and construction projects in southern California: January 1 to 23, 1992, Pasadena, California; January 27 to March 12, 1992, El Segundo, California; and March 19 to December 31, 1992, UCLA/Westwood, California. In 1992 petitioner filed a State income tax return only for the State of California. Petitioner did not earn any income in the State of Idaho or seek employment in Idaho in 1992.

In 1992 petitioner lived in his recreational vehicle, which he kept parked in San Dimas, California. Petitioner paid a campground operator approximately $500 per month to rent a space for his recreational vehicle in San Dimas.

In 1993 petitioner had employers other than Kiewit and worked in Idaho toward the end of the year. Petitioner's employment in California in 1993 was as follows: For the period January 1 to April 22, 1993, petitioner was employed by Kiewit in UCLA/Westwood, California; for the period April 27 to May 28, 1993, petitioner was employed by Contri Construction in Perris, California; for the period May 31 to September 16, 1993, petitioner was employed by Kiewit in Moreno Valley, California.

After completing work in Moreno Valley, California, on September 16, 1993, petitioner worked in Idaho for the remainder of the year. For the period October 25 to November 26, 1993, petitioner was employed by Kelly Cole in Bear, Idaho. For the period November 29 to December 31, 1993, petitioner was employed by Shorts Bar Logging in Riggins, Idaho.

During the part of 1993 that petitioner worked in California, he continued to live in the recreational vehicle in San Dimas until approximately May 21, 1993; then he moved to an apartment in Hemet, California. Petitioner lived in Hemet until at least September 16, 1993. Petitioner lived with his parents

at their home in Pollack, Idaho, while he was employed in Idaho in 1993. Petitioner did not have a lease or rental agreement with his parents.

Petitioner usually commuted daily from his respective California living quarters to the various California jobsites; he would occasionally stay overnight in a motel near one of the jobsites in California if he was too tired to drive. Petitioner also commuted from his parents' home in Pollack, Idaho, to the Idaho jobsites.

Petitioner held an Idaho driver's licence in both 1992 and 1993. In 1993 petitioner held an Idaho resident combination hunting and fishing license, an Idaho resident regular deer tag, and an Idaho resident regular elk tag. An individual must establish that he has been an Idaho resident for 6 months in order to obtain an Idaho resident combination hunting and fishing license. Petitioner presented his Idaho driver's license and was granted a resident hunting and fishing license. The State of Idaho made no further inquiries to verify that petitioner was a resident of Idaho.

On September 22, 1993, petitioner opened two bank accounts with Key Bank of Idaho: A savings account with a $4,000 deposit and a checking account with a $314.81 deposit. Thereafter, in 1993 petitioner made three checks payable to his mother totaling

$417. Petitioner filed 1993 State income tax returns for California and Idaho. In 1993 petitioner purchased a parcel of vacant land in Valley County, Idaho.

On August 21, 1995, petitioner filed his 1992 Form 1040, U.S. Individual Income Tax Return. On this return, petitioner showed his address as 3800 W. Devonshire, Hemet, California 92545 (the Hemet address). Petitioner designated his filing status as single and claimed only his personal exemption. Petitioner attached to his return a Form 2106, Employee Business Expenses, on which he claimed the following deductions for unreimbursed employee business expenses:

| | Expense | Amount |
|---|---|---|
| 1. | Vehicle | $5,443.20 |
| 2. | Parking fee | 867.00 |
| 3. | Travel | 8,211.00 |
| 4. | Business not on lines 1-3 | 5,290.00 |
| 5. | Meals | 1,492.80 |
| | Total claimed deductions | 21,304.00 |

On August 21, 1995, petitioner filed his 1993 Form 1040. Petitioner again showed the Hemet address as his address. Petitioner designated his filing status as single and claimed only his personal exemption. Petitioner attached a Form 2106 to his return and claimed the following deductions for unreimbursed employee business expenses:

| Expense | Amount |
|---|---|
| 1. Vehicle | $6,454 |
| 2. Parking fees | 855 |
| 3. Travel | 9,442 |
| 4. Business not on lines 1-3 | 4,988 |
| 5. Meals | 1,874 |
| Total claimed deductions | 23,613 |

The travel expenses claimed were for the cost of traveling between Idaho and California and the cost of occasionally staying in motels near petitioner's various jobsites. Because of the nature of his trade, petitioner incurred expenses for safety boots, coveralls, tools, and union dues, which he claimed as miscellaneous business deductions on his 1992 and 1993 returns. At trial, petitioner offered two "employee [statements]" showing amounts contributed as "Supplemental Union Dues" in 1992 of $714.65.

OPINION

Petitioner claimed business expense deductions for travel expenses incurred for trips between California and Idaho, and between his living quarters and various places of employment, and various miscellaneous expense deductions related to his employment in the construction industry. Respondent disallowed the deductions petitioner claimed for unreimbursed travel expenses on the grounds that petitioner was not "away from home" within the meaning of section 162(a)(2) when the expenses were paid, and for lack of substantiation as required by section 274(d). Respondent disallowed the miscellaneous business expense

deductions on the grounds that petitioner did not prove that he incurred the expenses pursuant to section 162(a), and that he did not maintain adequate records to establish the specific amounts of the deductions as required by section 6001.

1. Travel Expenses

Section 162 allows taxpayers to deduct the "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * traveling expenses * * * while away from home".  Sec. 162(a)(2).  Section 274(d) and its implementing regulations impose stringent substantiation requirements for the deduction of travel expenses under section 162(a).

a.  "Away From Home"

Petitioner must meet three requirements in order to deduct travel expenses under section 162(a)(2):  The expenses must be (1) reasonable and necessary; (2) incurred while away from home; and (3) incurred in pursuit of a trade or business.  Flowers v. Commissioner, 326 U.S. 465, 470 (1946).  Respondent contends that the travel expenses petitioner claimed do not satisfy the second Flowers requirement, that petitioner be "away from home."  We agree with respondent.

Section 162(a)(2) "reflects congressional concern both for the unavoidable duplication of expenses and for the fact that meals and lodging are more costly for a person who must travel

than they are for a person who can maintain a year-round home." Rambo v. Commissioner, 69 T.C. 920, 924 (1978). "The purpose of the 'away from home' provision is to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode". Kroll v. Commissioner, 49 T.C. 557, 562 (1968).

As a general rule, a taxpayer's "home" for purposes of section 162(a)(2) is the vicinity of his principal place of employment, irrespective of where his personal residence is located. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Sanderson v. Commissioner, T.C. Memo. 1998-358. Petitioner was employed at construction sites in California for all of 1992 and most of 1993. Thus, under the general rule, petitioner's tax home was the vicinity of those sites in California. However, petitioner relies on an exception to the general rule to argue that his tax home was Idaho, where his parents resided and where he lodged when he was physically present in that State.

Under the exception, if the principal place of business is temporary, and not indefinite, the taxpayer's personal residence may be considered the tax home. Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958); Kroll v. Commissioner, supra at 562. If the taxpayer incurs substantial and continuous living expenses at the personal residence, he or she may deduct the expenses associated with traveling to, and living at, the jobsite. Barone v.

<u>Commissioner</u>, 85 T.C. 462, 465 (1985), affd. without published opinion 807 F.2d 177 (9th Cir. 1986); <u>Kroll v. Commissioner</u>, <u>supra</u> at 562.

A place of business is temporary if the employment is such that termination within a short period could be reasonably foreseen. <u>Albert v. Commissioner</u>, 13 T.C. 129, 131 (1949). Conversely, employment is indefinite if termination cannot be foreseen within a "reasonably short period". <u>Stricker v. Commissioner</u>, 54 T.C. 355, 361 (1970), affd. 438 F.2d 1216 (6th Cir. 1971). Whether employment is temporary or indefinite is a question of fact. <u>Peurifoy v. Commissioner</u>, <u>supra</u> at 60-61.

The Court of Appeals for the Ninth Circuit, to which any appeal in this case would ordinarily lie, has expressed the temporary versus indefinite distinction as follows:

> An employee might be said to change his tax home if there is a reasonable probability known to him that he may be employed for a long period of time at his new station. What constitutes a 'long period of time' varies with circumstances surrounding each case. If such be the case, it is reasonable to expect him to move his permanent abode to his new station, and thus avoid the double burden that the Congress intended to mitigate. * * * [<u>Harvey v. Commissioner</u>, 283 F.2d 491, 495 (9th Cir. 1960), revg. 32 T.C. 1368 (1959).]

Subsequent opinions by the Court of Appeals for the Ninth Circuit reveal that its approach to the exception to the general "tax home" rule does not differ materially from the view of this Court. Both courts focus on whether a taxpayer could reasonably expect his employment outside the area of his residence to

continue beyond a "short" period of time.  <u>Wills v. Commissioner</u>, 411 F.2d 537, 541 (9th Cir. 1969), affg. 48 T.C. 308 (1967); see also <u>Coombs v. Commissioner</u>, 608 F.2d 1269, 1274-1276 (9th Cir. 1979), affg. in part and revg. in part 67 T.C. 476 (1976).

Petitioner asserts that his employment was temporary because each job he took had a definite end that he could estimate beforehand.  According to petitioner, the ability to predict the duration of a particular job necessarily means that the job cannot be indefinite, and therefore must be temporary.

Petitioner's employment in California was not temporary. Construction projects are typically, if not always, of limited duration.  <u>Weichlein v. Commissioner</u>, T.C. Memo. 1995-553. However, this does not end the inquiry.  This Court has recognized that when the taxpayer has a series of jobs with one employer, the actual duration of the employment relationship between the taxpayer and employer should be considered when determining whether the employment was indefinite.  <u>Norwood v. Commissioner</u>, 66 T.C. 467, 471 (1976).  This is true notwithstanding that the employment relationship consists of a series of shorter assignments.  <u>Id.</u>  Where the employee is highly regarded by the employer, as appears to be the case here, the relationship between the two parties is a continuing one, subject only to the availability of projects requiring the employee's skills.  <u>Weichlein v. Commissioner</u>, <u>supra</u>.  When a taxpayer has

an ongoing relationship with an employer because he or she works on a succession of shorter projects, the taxpayer's employment status is not characterized as temporary for Federal income tax purposes. See id.; see also Yeates v. Commissioner, T.C. Memo. 1988-259, affd. 873 F.2d 1159-1161 (8th Cir. 1989).

Petitioner's relationship with Kiewit began in 1987 and continued through the time of trial. Kiewit employed petitioner for most of 1990, all of 1991, all of 1992, most of 1993, and part of 1994. All of the construction projects petitioner worked on while employed by Kiewit in the years at issue were in Southern California. The relationship between petitioner and Kiewit, his primary employer, was clearly a continuing one because of the substantial length of petitioner's continuing employment. Thus, it cannot be said that termination of petitioner's employment with Kiewit could be foreseen within a reasonably short period of time. Albert v. Commissioner, supra at 131.

Petitioner has not established that he maintained a personal residence in Idaho and incurred duplicate living expenses because of the exigencies of his work. Petitioner lodged at his parents' house when he worked in Idaho but did not have a rental agreement or lease with his parents. According to petitioner, he sporadically contributed money to his parents' household for bills and groceries, but did not have an arrangement with them to

make regular rental payments. Petitioner offered as evidence of his contributions three checks totaling $417 drawn on his newly created checking account, payable to his mother. Petitioner was physically present in Idaho when he delivered the checks to his mother. These infrequent and nominal amounts are neither substantial nor continuous. They are not strong indications that petitioner was burdened by duplicate living expenses; indeed, they indicate to the contrary. We accordingly conclude that petitioner is not entitled to relief on the theory that his employment in southern California was temporary. Kroll v. Commissioner, 49 T.C. at 562.

b. Substantiation

For the sake of completeness, we summarily address whether petitioner substantiated the expenses he claimed as travel expense deductions. Even if petitioner had persuaded us that the travel expenses he claimed as deductions were incurred while he was "away from home", the deductions would be disallowed because petitioner has failed to meet the substantiation requirements of section 274(d). Generally, when evidence shows that a taxpayer incurred a deductible expense, but the exact amount cannot be determined, the Court may estimate the amount allowable as a deduction. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, section 274(d) precludes the estimation of travel expense deductions otherwise allowable under section 162.

Under section 274(d), all travel expense deductions must meet stringent substantiation requirements.  Petitioner did not satisfy the substantiation requirements of section 274(d).

Under section 274(d), no deduction is allowed under section 162 for any travel expense:

> unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, or the date and description of the gift, (C) the business purpose of the expense of other item. * * *

To substantiate a deduction by adequate records, a taxpayer must maintain an account book, diary, log, statement of expense, trip sheets, and/or other documentary evidence, which, in combination, are sufficient to establish each element of expenditure or use. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

Petitioner did not produce any records for travel taken during 1992 and 1993.  He did not maintain a log for mileage deductions claimed, nor did he offer any statement of expense or receipts for his trips between California and Idaho.  Petitioner offered only his uncorroborated testimony as evidence of the claimed travel expenses.  Section 274(d) expressly requires corroboration of any statement by the taxpayer as to amounts expended for travel.  Petitioner has failed to meet the strict substantiation requirements of section 274(d).

The regulations provide a limited exception to the substantiation requirements of section 274(d). Under section 1.274-5(c)(5), Income Tax Regs.:

> Where the taxpayer establishes that the failure to produce adequate records is due to the loss of such records through circumstances beyond the taxpayer's control, such as destruction by fire, flood, earthquake, or other casualty, the taxpayer shall have a right to substantiate a deduction by reasonable reconstruction of his expenditures.

Petitioner testified that he kept records of his flights between California and Idaho, but that those records have been lost. Petitioner did not present any evidence as to how the loss of the records occurred, or that the loss was due to "circumstances beyond * * * [his] control". The limited exception does not apply to the loss of petitioner's records.

2. Miscellaneous Business Expense Deductions

Petitioner also claimed miscellaneous business deductions of $5,290 and $4,988 on his 1992 and 1993 returns, respectively. According to petitioner's testimony, the business expenditures were for union dues, tools, work clothing, and boots. Respondent denied the miscellaneous business deductions on the grounds that petitioner failed to establish that he incurred the expenses claimed as deductions, and that he failed to maintain adequate records to establish the specific amounts of the deductions as required by section 6001.

A taxpayer is entitled to deduct the ordinary and necessary expenses he incurs during the taxable year in carrying on a trade or business. Sec. 162(a). To avail himself of the deduction, a taxpayer is required to maintain adequate records sufficient to establish the amounts of the deductions. Sec. 6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). The burden of substantiation rests with the taxpayer. Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. 540 F.2d 821 (5th Cir. 1976).

Beyond two statements reflecting amounts contributed as supplemental union dues, petitioner did not proffer any records to substantiate his entitlement to the deductions claimed. Petitioner did not meet the record-keeping requirements of section 6001. Petitioner did, however, offer his own testimony regarding the nature and amounts of the expenses.

When there are no records to substantiate deductions, the Court can estimate the amounts of allowable deductions if (1) there is evidence that the expenses were in fact incurred, and (2) there is a basis upon which an estimate may be made. Cohan v. Commissioner, supra at 543-544; Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Petitioner's testimony as to the amount of each expense claimed was as follows: Approximately $200 for work boots at

least twice per year; $50-$60 for coveralls each year; $2,400 per year for tools; and $30 per month for union dues.

With respect to the deductions for work boots and coveralls, work clothing may be deductible under section 162 if the taxpayer can establish that:  (1) The clothing was required or essential in the taxpayer's employment; (2) the clothing was not suitable for general or personal wear; and (3) the clothing was not so worn.  Yeomans v. Commissioner, 30 T.C. 757, 767-769 (1958); Kozera v. Commissioner, T.C. Memo. 1986-604.

The Court is satisfied that petitioner incurred expenses for work boots and coveralls.  Petitioner's credible testimony to that effect, and the nature of his jobs, which included working as a demolition foreman, a drilling crew foreman, and a master mechanic, are satisfactory evidence to support the deductions.

Because petitioner's trade was labor intensive, work boots and coveralls were essential to his employment in the construction industry.  We also find that the type of boots and coveralls this sort of work requires, for safety reasons, may not be suitable for general or personal wear.  Accordingly, "bearing heavily" on petitioner, whose "inexactitude is of his own making", we allow a deduction of $100 for each of the tax years for the cost of work boots.  Cohan v. Commissioner, 39 F.2d at 544.  Similarly, while petitioner testified that he spent up to $60 per pair of coveralls, he had no records to substantiate that

amount. The Court will again bear heavily on petitioner and allow him a $30 deduction for coveralls for each of the 1992 and 1993 years.

Petitioner also claimed as a deduction amounts contributed as dues to the labor union of which he is a member. At trial, petitioner testified that he spent up to $30 per month on union dues. This Court found petitioner to be a credible witness, and we are satisfied that some amount was contributed to petitioner's labor union. Consistent with our treatment of the work boots and coveralls, a deduction of $15 per month for union dues is allowed for 1992 and 1993. Petitioner is entitled to an additional deduction for supplemental union dues paid in 1992 of $714.65, which was substantiated by two "employee [statements]".

The foregoing miscellaneous business expense deductions to which petitioner is entitled are all deductible on petitioner's Schedule A, Itemized Deductions. As itemized deductions, they are subject to the 2-percent limitation. Sec. 67(a).

Petitioner's outlay for tools poses a more difficult problem. Petitioner did not make an election under section 179 that would permit him to deduct currently up to $10,000 of the cost of depreciable property in the year it was placed in service. Having made no section 179 election, petitioner is within the general rules regarding depreciation. See Alisobhani v. Commissioner, T.C. Memo. 1994-629.

While small tools with a useful life of less than 1 year are currently deductible, <u>Clemons v. Commissioner</u>, T.C. Memo. 1979-273, the cost of tools with a useful life that exceeds 1 year are recovered by depreciation, secs. 167(a) and 168(b); <u>Clemons v. Commissioner</u>, <u>supra</u>.

At trial, petitioner testified that he spent, on average, $2,400 per year on tools. He failed, however, to describe the type, number, expected useful life, and cost of each tool purchased. Some of the tools he used may have required at least annual replacement, which would be a currently deductible expense. Others could have been expected to survive well beyond the year in which they were purchased, and their costs would be recoverable through depreciation deductions over a number of years. Without evidence of these matters, we have no basis for an appropriate estimate.

Petitioner has specified neither the amount of the deduction that should be allowed for each tool he purchased in 1992 and 1993 nor the amounts spent for tools in these and prior years for which depreciation should be allowed. With no guidance in the record beyond petitioner's own testimony of the total amounts spent on tools, we will not speculate on the amount that petitioner should be allowed to deduct. To allow any deduction would be "unguided largesse." <u>Williams v. United States</u>, 245 F.2d 559, 560 (5th Cir. 1957). We sustain respondent's position

disallowing any deduction for the cost of tools.

3. Accuracy-Related Penalties and Addition to Tax

Respondent also determined accuracy-related penalties under section 6662(a) for 1992 and 1993. Section 6662(a) imposes a 20-percent penalty on underpayments attributable to negligence or disregard of rules or regulations. Sec. 6662(b)(1). "Negligence" is the failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, or the "failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985). No accuracy-related penalty may be imposed on any portion of an underpayment if it is shown that there was a "reasonable cause" for such portion and that the taxpayer acted in "good faith" with respect to such portion. Sec. 6664(c)(1). The determination of whether a taxpayer acted in good faith is made case by case, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b), Income Tax Regs. The most important factor is the extent of the taxpayer's efforts to determine the proper tax liability. Id.

On brief, petitioner argues that for 1992 and 1993 he calculated his business expense deductions the same way he had done for several prior years, and that he did not receive any deficiency notices for those years. Petitioner argues that his reliance on respondent's failure to take exception to his

deduction claims for prior years amounts to "reasonable cause" for his underpayments in the years at issue. In support of this assertion, petitioner cites Estate of Phillips v. Commissioner, T.C. Memo. 1955-139, revd. on other grounds 246 F.2d 209 (5th Cir. 1957). In Estate of Phillips, the Commissioner had examined the taxpayer's records in prior years and had not assessed or asserted deficiencies. We held that the taxpayer may use the Commissioner's tacit approval to rebut the presumption of correctness of the Commissioner's determination of the negligence penalties for the years at issue.

Petitioner's reliance on Estate of Phillips is misplaced. In Estate of Phillips the Commissioner had examined prior years and had taken no exception to the prior years' returns. However, the Commissioner's approval of a prior year did not purge the negligence of a later year. We simply held that the Commissioner's tacit approval of the prior years' returns shifted to the Commissioner the burden of coming forward with evidence of the taxpayer's negligence, a "burden he has not sustained."

Petitioner did not offer any evidence to show that respondent examined any tax year prior to 1992. Therefore, there is no evidence in the record that respondent ever tacitly approved petitioner's method of calculating his Federal income tax. Even if it can be said--and we do not agree--that by failing to audit petitioner's prior returns respondent somehow

tacitly approved petitioner's methodology, respondent has come forward with sufficient evidence to prove petitioner's negligence.  Petitioner did not maintain a contemporaneous mileage log for the claimed mileage deductions.  Petitioner claimed deductions for the occasional motel he stayed in when he did not feel like driving back to his recreational vehicle or apartment.  However, petitioner failed to offer any receipts or explain how he calculated these expenses.  Petitioner claimed deductions for flights between Idaho and California, and the associated parking expenses, but failed to proffer this Court any records, receipts, or reconstruction for submission into evidence.

The most important factor in deciding whether a taxpayer was negligent is the extent of the taxpayer's efforts to determine the proper tax liability.  Sec. 1.6664-4(b), Income Tax Regs.  In light of the many deductions petitioner claimed, his failure to maintain adequate records was not a reasonable attempt to comply with the Internal Revenue Code.  We therefore sustain respondent's position.

In addition to the accuracy-related penalties for 1992 and 1993, respondent determined an addition to tax pursuant to section 6651(a) for late filing for 1993.  The addition is 5 percent of the amount required to be shown as tax on the delinquent return for each month the return is late (not to

exceed 25 percent).  Sec. 6651(a)(1).  A taxpayer is excused from the late-filing addition to tax if he shows that the late filing was due to reasonable cause and not due to willful neglect.  <u>Id.</u> However, the taxpayer bears the burden of proof on this issue. Rule 142(a).  Petitioner offered no evidence to rebut respondent's determination.  We sustain respondent's determination.

To give effect to our partial allowance of some deductions petitioner claimed,

<u>Decision will be entered</u>

<u>under Rule 155</u>.